**Jessie A. HILL, Jr., Plaintiff,**

v.

**XEROX CORPORATION, Defendant.**

**No. 95–40471–RH.**

United States District Court,
N.D. Florida,
Tallahassee Division.

Feb. 2, 1998.

**1380**

Steven R. Andrews, Steven R. Andrews PA, Tallahassee, FL, Marie A. Mattox, Mattox & Hood PA, Tallahassee, FL, for plaintiff.

Eric Paul Berezin, John F. Wymer, III, Powell Goldstein Frazer etc., Atlanta, GA, William Bailey Demeza, Holland & Knight, for defendant.

### ORDER ON POST–TRIAL MOTIONS

HINKLE, District Judge.

This is an action under the Age Discrimination in Employment Act ("ADEA"). The jury returned a verdict finding that defendant Xerox Corporation terminated the employment of plaintiff Jessie A. Hill, Jr. because of his age. Xerox has moved for judgment as a matter of law and alternatively for a new trial. Xerox also asserts that, if the finding of liability stands, Mr. Hill's remedies should include reinstatement, not front pay. For the reasons that follow, I deny Xerox's motion for judgment as a matter of law or new trial, determine that Mr. Hill should be reinstated, and direct entry of a money judgment in Mr. Hill's favor excluding any amount for front pay.

#### Facts

Mr. Hill was born on December 15, 1943. His first full-time job, after college and military service, was with Xerox, beginning on February 13, 1967, in Alabama. He was 25 years old. He received his first supervisory position in 1975 and became the manager for Xerox's contract with the State of Alabama in 1981. In April 1986, Xerox transferred Mr. Hill to its Tallahassee office, where his title was Systems Account Sales Manager and he was the manager for Xerox's contract with the State of Florida. In Xerox's organizational structure, the Tallahassee office was part of the district managed from Tampa.

On January 1, 1993, when Mr. Hill was 49 years old, Molly O'Dea became the District Manager for Tampa Operations and, as such, Mr. Hill's immediate supervisor. Ms. O'Dea had made derogatory remarks about "older people," saying she "would like to see young fresher blood get promoted through the ranks and drive out some of the old, more tired people." (R.157.67). Ms. O'Dea also had referred to the previous Division Manager—her own supervisor—as an "old goat." (R.157.68). Ms. O'Dea had given a speech indicating that "tenured people were resting on their salaries and things had to change" (R.157.77) and had made similar comments at a staff meeting. (R.157.109).

In late 1993, Ms. O'Dea learned that Xerox would soon undertake a substantial involuntary reduction in force (referred to at Xerox as an "IRIF"). The proposed IRIF was secret; Ms. O'Dea and other members of management who knew of the proposal were prohibited from disclosing it to other employees.

Ms. O'Dea was a member of a three-person "partnership" within Xerox's organizational structure with jurisdiction over ten managers. Mr. Hill was one of the ten. As part of the IRIF process, Ms. O'Dea performed subjective evaluations of the ten managers; the subjective evaluations, together with other criteria, were to be used to select the managers to be laid off as part of the IRIF. Ms. O'Dea ranked each of the six managers who were 40 years of age or younger higher than any of the four managers who were over 40 years of age. Thus, on Ms. O'Dea's subjective rankings, the six managers age 40 or younger came in first, second, third, fourth, fifth and sixth, while the four managers who were over age 40 came in seventh, eighth, ninth and tenth. While these rankings ultimately made no difference in the determination of who would be laid off, a reasonable juror could conclude from the consistent pattern of Ms. O'Dea's rankings that she did indeed have a bias against older

workers and that she intended to act on that bias in the termination process.

Almost simultaneously, and perhaps coincidentally, in late 1993 Xerox also determined to close the Tallahassee office. Xerox determined to move Mr. Hill's position, and all work related to the State of Florida contract, to Tampa. Xerox determined to enter an agency contract in Tallahassee for the handling of some of Xerox's commercial accounts; the person who would receive the new agency contract would not be a Xerox employee but would be an independent contractor handling Xerox products and servicing Xerox customers.

Ms. O'Dea advised Mr. Hill of these plans and asked whether he would prefer to move to Tampa and keep his position or leave his employment with Xerox in order to establish the independent agency in Tallahassee. Ms. O'Dea advised Mr. Hill that the agency would receive all of the Tallahassee area accounts with limited exceptions. As so described, the Tallahassee area agency was an attractive opportunity that Mr. Hill was likely to accept (or, at least, so a juror could reasonably infer). Mr. Hill advised Ms. O'Dea that he would prefer the agency over a move to Tampa.

Ms. O'Dea proceeded to select David Zuhlke, a 36-year old Xerox employee in New York, as a replacement for Mr. Hill as manager of the State of Florida contract. When it purportedly was too late for Mr. Hill to choose to retain his position, Ms. O'Dea substantially changed the agency she had offered Mr. Hill, eliminating many of the better accounts and leaving only a scaled down, much less attractive venture.[1] Mr. Hill refused the reduced agency offer and chose instead to remain a Xerox employee.

According to Ms. O'Dea, however, the transfer of Mr. Zuhlke was a done deal, and Mr. Hill no longer had a position. When the IRIF was announced on January 10, 1994, Ms. O'Dea told Mr. Hill he had been selected for termination as part of the IRIF. Ms. O'Dea confirmed this by letter dated that day.[2]

Mr. Hill's last day at Xerox was in April 1994. He had been there 27 years, more than half his life. Except for part-time jobs as a student or young adult and military service, Mr. Hill had never had another employer. He presented credible and largely undisputed testimony of the very substantial mental and emotional suffering that resulted.

### Procedural Status: The Verdict and Post–Trial Motions

Mr. Hill sued Xerox under the federal and state statutes proscribing age discrimination in employment. See 29 U.S.C. §§ 621–34; Fla.Stat. §§ 760.01–.11 (1997). The jury found that Xerox terminated Mr. Hill because of his age and, in doing so, willfully violated the age discrimination laws. The jury found damages for past lost earnings and benefits (that is, lost earnings and benefits through the date of trial) in the amount of $73,000. The jury found damages for future lost earnings and benefits in the amount of $457,000. The jury found damages for pain and suffering, mental anguish, loss of dignity, and any other intangible injuries (hereafter referred to collectively as "mental anguish," and recoverable under state law but not under federal law) in the amount of $457,000.

I directed the entry of judgment in Mr. Hill's favor in the amount of $1,060,000, consisting of double the past lost earnings and

---

1. Xerox vehemently denies that the agency Ms. O'Dea offered Mr. Hill when she advised him of the impending move of his position to Tampa was different from the agency she ultimately offered him after he decided to stay in Tallahassee. But Mr. Hill presented credible testimony in support of his account, and the circumstances support him: why would he agree to take the contract but then, when he had no alternative, turn it down? Moreover, Xerox failed to produce documentation of the initial agency offer. In short, the jury was entitled to credit the unequivocal testimony rejecting Xerox's version of these events.

2. Curiously, although Xerox now asserts that the hiring of Mr. Zuhlke was the result solely of Mr. Hill's having turned down the job and was unrelated to the IRIF, Ms. O'Dea post-dated her letter offering the job to Mr. Zuhlke for January 10, 1994, the date on which the IRIF was announced and Mr. Hill was explicitly terminated. It is clear that Ms. O'Dea post-dated the letter; Mr. Zuhlke dated his signature at the bottom of the letter, which signified his acceptance, January 6, 1994, four days before the letter itself was dated.

benefits (as required by federal law based on the jury's finding that the violation was willful), plus the future lost earnings and benefits plus the damages for mental anguish. Xerox filed timely post-trial motions seeking judgment as a matter of law and, alternatively, a new trial. Xerox also challenges the damages awards and asserts that, if the judgment on liability is upheld, Mr. Hill should be reinstated but should not receive an award for future earnings and benefits.

### The Merits

## I. LIABILITY: INTENTIONAL AGE DISCRIMINATION

Age discrimination claims, including those arising from a reduction in force or the elimination of a position, are subject to a variation of the same burden shifting analysis applicable in Title VII cases. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (announcing test for allocating burdens in Title VII cases); *Benson v. Tocco, Inc.,* 113 F.3d 1203, 1207 (11th Cir.1997) (announcing standards applicable to age discrimination cases, including those involving reduction in force or elimination of position); *Evans v. McClain of Georgia, Inc.,* 131 F.3d 957, 961 (11th Cir.1997) (applying *McDonnell Douglas* burden shifting standards in age case).

 As these cases make clear, the burden was on Mr. Hill, as plaintiff, to establish a prima facie case of age discrimination. If this case is viewed as one involving termination from a continuing position (that is, not as a reduction-in-force or elimination-of-position case), then, in order to establish a prima facie case, Mr. Hill had to establish that he was in the protected age group, that his employment was involuntarily terminated, that he was qualified to do the job, and perhaps that he was replaced by a younger person. *See Benson,* 113 F.3d at 1207–08.[3] If, on the other hand, this case is viewed as one involving a reduction in force or the elimination of Mr. Hill's position, then, in order to establish a prima facie case, Mr. Hill

had to establish that he was in the protected age group, that his employment was involuntarily terminated, and that he was qualified for his current position or to assume another position, and, in addition, Mr. Hill had to present evidence from which a jury reasonably could conclude that Xerox intended to discriminate against him based on age. *See Benson,* 113 F.3d at 1208.

Mr. Hill easily met these requirements here. Mr. Hill was 50 years old and thus in the protected age group. Xerox terminated his employment. Mr. Hill was, as Xerox admits, qualified for his job (and for many other jobs at Xerox). Xerox replaced Mr. Hill with Mr. Zuhlke, an employee who was younger (and, at age 36, outside the protected age group). And Mr. Hill presented evidence from which a jury could find (and this jury did find) that Xerox intentionally discriminated against him based on age.

 Only two of these elements of a prima facie case warrant discussion. First, although Xerox denies it terminated Mr. Hill, it does so based on semantics and with no credible support. On January 10, 1994, Ms. O'Dea wrote Mr. Hill a letter confirming her conversations with him on that day and formally advising him of the "involuntary reduction in force." Ms. O'Dea said that, as a result of the IRIF, Mr. Hill was "being given separation notice effective January 10, 1994." She advised him of his salary continuance benefits and told him that, during the salary continuance period, he "should devote as much time as possible to securing employment outside Xerox." Ms. O'Dea advised Mr. Hill she would "schedule an exit interview" to discuss Mr. Hill's benefits and address administrative requirements "at the time of termination." She closed by saying, "I wish you success in your search for a new position and in your future career endeavors."

 This letter told Mr. Hill in unmistakable terms that his employment was being

---

**3.** The articulation of the standard in the text adapts *Benson* to the facts of this case. Thus, while Benson requires a plaintiff to show that he suffered "adverse employment action," the only adverse action on which Mr. Hill relies here is termination. In addition, while it perhaps could

be debated whether, in order to establish a prima facie case, a plaintiff must indeed show he was replaced by a younger person, that does not matter here; Mr. Hill's replacement was 36 years old.

terminated. Xerox now says Mr. Hill had chosen earlier to take the agency he was offered and thus in effect had quit, but that is not what happened. Mr. Hill left because Xerox told him he no longer had a job, and he did so under protest; he did not quit. And in any event, Ms. O'Dea's bait and switch tactics with the proffered agency would hardly support a claim that, having taken the bait, Mr. Hill must be held to the switch. While Xerox can argue (unsuccessfully, it turns out) that it terminated Mr. Hill for reasons unrelated to age, Xerox cannot plausibly assert he left voluntarily.[4]

■ The second element of a prima facie case that warrants discussion is the requirement that, in a reduction-in-force or elimination-of-position case, the plaintiff must present evidence from which a jury reasonably could conclude that the employer intended to discriminate against the plaintiff based on age. The evidence presented by Mr. Hill in the case at bar included Ms. O'Dea's explicit remarks suggesting bias against older workers, her subjective ranking of the four oldest managers in her division as the four worst, and the unexplained and inexplicable bait and switch tactic she used to assure Mr. Hill would either leave voluntarily or be terminated in the IRIF. If this evidence were deemed insufficient to constitute a prima facie case, then few if any employees would ever be able to make out a prima facie case of age discrimination in an IRIF, even if they were indeed the victim of purposeful and egregious age discrimination.

■ Once a plaintiff presents a prima facie case, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the employment decision at issue. Here Xerox met this burden, asserting that it chose for business reasons to move Mr. Hill's position to Tampa, that Mr. Hill elected to take an agency in Tallahassee rather than move to Tampa, that Xerox therefore filled Mr. Hill's position, and that when Mr. Hill later elected to stay, he had no position and therefore was one of the employees selected for termination in the IRIF. If believed by the jury, this explanation would have entitled Xerox to prevail.

In response to Xerox's proffered legitimate explanation, Mr. Hill was entitled to assert that Xerox's explanation was merely a pretext for age discrimination. Mr. Hill did this by showing that the agency Ms. O'Dea originally described to him was much different from what he was offered after it was too late (or at least too late according to Xerox) for him to continue in his old position as relocated to Tampa.[5] Whether Ms. O'Dea indeed played the bait and switch on Mr. Hill was a classic jury question. The jury was free, as it did, to accept Mr. Hill's version of these events.[6]

---

4. Xerox also says it offered Mr. Hill at least two other jobs that he declined. Mr. Hill testified, without contradiction, that these were substantial demotions, and he also said Xerox never actually offered him the jobs. Xerox now asserts that the salaries it might have paid him in these positions were comparable or nearly comparable to his existing salary and that it might have paid his moving expenses to take the positions; in doing so, Xerox is attempting to rely on facts of which it never advised Mr. Hill at the time. In any event, the offering of a substantial demotion does not prevent a plaintiff from making out a prima facie case of age discrimination. The jury explicitly found, and on this record was entitled to find, that Mr. Hill was terminated, just as Ms. O'Dea's letter plainly said.

5. Ms. O'Dea says she had already hired Mr. Zuhlke before Mr. Hill said he was willing to stay. Her testimony on this entire subject, however, rings less than true. The IRIF was announced January 10, 1994. Ms. O'Dea dated her letter offering the job to Mr. Zuhlke January 10, 1994. And Ms. O'Dea terminated Mr. Hill on January 10, 1994. If Mr. Hill's departure and Mr. Zuhlke's hiring were indeed unrelated to the IRIF as Ms. O'Dea now claims, why did she not tell Mr. Hill, when he declined the agency, that the effect would be his termination? Why did she not write Mr. Zuhlke earlier, when his selection was cast in stone sufficiently to prevent Mr. Hill from keeping his job as he wanted to do? Why did she post-date her letter to Mr. Zuhlke? Both as a matter of demeanor on the stand, and from an analysis of the substance of her testimony, Ms. O'Dea was not a credible witness.

6. Ms. O'Dea says that when she first offered the agency to Mr. Hill in November 1993, she was unaware of the coming IRIF. Even if true, this would simply found an inference that, when the IRIF became available as a way to get rid of Mr. Hill, Mr. O'Dea no longer needed to offer him as good an agency, and cut back the offer knowing that by doing so she could be rid of Mr. Hill entirely.

The ultimate burden of course remained on Mr. Hill at all times to prove that his termination was based on age. Based on the evidence of pretext, coupled with Ms. O'Dea's remarks and subjective evaluations suggesting age bias, the jury was entitled to find, as it did, that Xerox intentionally discriminated against Mr. Hill based on age.

## II. DAMAGES—PAST LOST EARNINGS AND BENEFITS

The jury assessed damages for past lost earnings and benefits in the amount of $73,000. Based on the jury's finding of willfulness, Mr. Hill is entitled to statutory doubling of that amount. *See* 29 U.S.C. § 626(b), incorporating 29 U.S.C. § 216(b). Recovery of these amounts is clearly appropriate.

## III. DAMAGES—MENTAL ANGUISH

■ The jury assessed damages for mental anguish experienced in the past or to be experienced in the future in the amount of $457,000. Xerox asserts this was excessive, but the evidence of the mental and emotional effect of this termination on Mr. Hill was substantial. The firing of a 50–year–old employee and corresponding disruption of a 27–year career to satisfy the clearly illegal desire of a supervisor to bring in "young fresher blood" and get rid of the "old, more tired people" undoubtedly causes substantial mental and emotional damages. The jury's assessment of $457,000 was not unreasonable.[7]

■ To be sure, Congress could reasonably decide, as it did, that such mental or emotional damages ought not be recoverable

as part of a federal claim of age discrimination. But just as clearly, the Florida legislature could reasonably decide, as it did, that such mental or emotional damages *should* be recoverable, under Florida law. Mr. Hill was entitled, under the law of Florida, to recover such damages, and the jury, as the finder of fact, was entitled to determine those damages as it did.[8]

## IV. REINSTATEMENT OR FRONT PAY

Xerox asserted at trial that the issue of future economic damages should not be submitted to the jury without an express determination by the court of whether or not reinstatement was feasible. Xerox did not assert that reinstatement was feasible or that, if Mr. Hill won on liability, reinstatement would be appropriate. Xerox simply stood moot on the issue. After the jury returned its verdict, Xerox decided reinstatement would be preferable, undoubtedly based on the size of the verdict.

For his part, Mr. Hill now says he abandoned his claim for reinstatement at trial, but he never said so, and the case went to trial based on a complaint in which Mr. Hill prayed for, among other things, reinstatement. Mr. Hill, like Xerox, stood moot on the issue until the verdict was returned, and then, apparently satisfied with the jury's determination of future lost earnings, took the position that reinstatement would not be feasible.

In short, neither party made an explicit choice in favor of either front pay or reinstatement prior to the return of the jury's

---

**7.** Xerox asserts that "hurt, anger and frustration are a part of life." (Xerox's Memorandum in Support of Motion for Judgment as a Matter of Law or Alternative for New Trial, document 142, at page 24). Thus, having intentionally discriminated against Mr. Hill based on his age, Xerox now says, in effect, "Let him eat cake." The law of Florida, however, provides for compensatory damages. *See* Fla.Stat. 760.11(5).

**8.** Although, as set forth below, I accept Xerox's request that Mr. Hill be reinstated (thus taking away the jury's award for future lost earnings and benefits), this does not affect the jury's award for mental anguish, either past or future. Xerox's termination of Mr. Hill caused substantial mental anguish, and reinstatement will neither erase the past anguish nor prevent further

anguish. This is simply a separate element of damages. Moreover, Mr. Hill will be getting something less desirable to him (reinstatement) than what the jury intended him to have (an award of future lost earnings and benefits in the amount determined by the jury); Mr. Hill thus will not be better off, mentally and emotionally, than the jury expected. In addition, Xerox acquiesced in the combining of past and future mental anguish on the verdict form (R.158.295); Xerox is not free now to assert that the vacating of the award of future economic damages (as advocated by Xerox) somehow should affect the validity of the award of future damages for mental anguish and, in turn, the undifferentiated jury award of both past and future damages for mental anguish.

verdict. I submitted the issue of future lost earnings and benefits to the jury so that, if it were to be determined later (either at this level or on appeal) that reinstatement was not appropriate, a retrial to determine the amount of future lost earnings and benefits would not be necessary.[9]

 The law is settled that reinstatement ordinarily is the preferred remedy and that front pay should be awarded only when reinstatement is not feasible or otherwise is not an appropriate remedy. Even the cases relied upon by Mr. Hill expressly recognize this rule. *See, e.g., Lewis v. Federal Prison Industries, Inc.,* 953 F.2d 1277, 1281 (11th Cir. 1992) (upholding award of front pay where, according to psychiatric testimony, discrimination at issue caused severe depression that in effect disabled plaintiff and where reinstatement would exacerbate effect; recognizing, however, that "Front pay remains a special remedy, warranted only in egregious circumstances"); *Wilson v. S & L Acquisition Co.,* 940 F.2d 1429, 1438 (11th Cir.1991) (upholding award of front pay where defendant had sold business in which plaintiff worked, but recognizing that the "preferred equitable remedy" is "reinstatement instead of front pay" and that the general rule allows prospective damages "when it is not feasible to reinstate the employee") (quoting earlier authority in part).

In the case bar, reinstatement is feasible. Mr. Hill is a competent employee, and Xerox is an employer with many positions Mr. Hill could fill. Although three factors might seem to cut against this conclusion, they do not carry the day.

First, Mr. Hill was the victim of discrimination. This is true, however, in every case in which the issue arises (that is, in every case the plaintiff wins on liability). More importantly, here the person principally responsible for the discrimination, Ms. O'Dea, apparently is no longer a Xerox employee. Surely there is somewhere Mr. Hill can work at Xerox without suffering either a continuation of the past discrimination or any adverse treatment based on his having successfully called Xerox to account. Mr. Hill faces no greater risk than any successful plaintiff of suffering adverse effects from reinstatement.

Second, Mr. Hill's employment was in Tallahassee, but Xerox has closed the Tallahassee office and, if reinstated, Mr. Hill presumably will have to relocate. This is a less significant factor here than it would be otherwise, however, because Xerox had decided, apparently for non-discriminatory reasons, to relocate its Tallahassee office in any event, so that Mr. Hill would have had to move in order to stay with Xerox even if he had never been a victim of age discrimination. Under these circumstances, it is not too much to

---

**9.** Front pay may be an issue for the court, not for the jury. *See, e.g., Ramsey v. Chrysler First, Inc.,* 861 F.2d 1541, 1545 (11th Cir.1988) (rejecting assertion that judge set front pay at too high an amount and, in doing so, describing front pay as an equitable remedy within judge's discretion); *Castle v. Sangamo Weston, Inc.,* 837 F.2d 1550, 1561 (11th Cir.1988) (stating that selection of remedies in ADEA case is "a matter for the trial court's discretion"); *Laborers' Local 478 v. Burroughs,* 522 So.2d 852, 854 (Fla. 3d DCA 1987) (describing front pay as "equitable in nature" in connection with challenge to authority of administrative agency). None of these cases, however, explicitly addressed the issue of whether front pay (that is, damages for future lost earnings) should be determined by the court or the jury; there is no expressly controlling authority on this issue in either the Eleventh Circuit or under the law of Florida. There is a split of authority among the other circuits. *See, e.g.,* 8 L. Larson, *Employment Discrimination* § 145.07[1] at 145–23 (2d ed.1997) (asserting front pay issue is for jury in Third, Sixth, Ninth and possibly Seventh

Circuits and for court in First, Second, Fourth, Eighth and (citing only *Castle*) Eleventh Circuits). Even if the issue properly were for the court, the court appropriately could submit the issue to an advisory jury. I believe that, as a matter of discretion and in fairness to the defendant, in cases where some categories of damages must be submitted to the jury, it ordinarily is preferable to submit all damages issues to the jury, at least on an advisory basis, so that there is not a hidden source of a money judgment of which the jury is unaware when it sets damages in other categories. A jury that is aware of all the applicable categories of damages can assess damages appropriately, with no risk (or at least minimized risk) of double counting or overlapping. I also believe that, as a matter of discretion, it ordinarily is preferable to fashion a verdict form so that if, for example, the appellate court later takes a different view of the law, the jury's findings will be known and no retrial will be required. Contrary to Xerox's suggestions, this is not an improper approach.

expect Mr. Hill to do what he would have had to do to stay with Xerox: relocate.

Third, reinstatement is a less desirable remedy for an older employee than for a younger employee. At some point, an employee may be so close to retirement that reinstatement is not worth the effort and front pay is thus a better remedy. But Mr. Hill is still more than ten years from normal retirement age, and there is no reason to believe he cannot have a substantial continuing career with Xerox.

Reinstatement, in combination with payment of past lost earnings and benefits and damages for mental anguish in accordance with Florida law, will afford Mr. Hill full and fair relief for the discrimination he has suffered. This remedy is a better fit for the violation at issue than front pay, as the law making reinstatement the preferred remedy recognizes. The judgment thus will be amended accordingly.

### Conclusion

The jury reasonably found that Xerox terminated Mr. Hill's employment as a result of intentional age discrimination. Mr. Hill is entitled to judgment on the verdict, except that reinstatement should be required in lieu of damages for future lost earnings and benefits. Accordingly,

IT IS ORDERED:

1. Xerox's motion for judgment as a matter of law or alternatively for a new trial (document 141) is DENIED.

2. Xerox's motion for a determination of reinstatement and amendment of the judgment (document 143) is GRANTED.

3. Within 90 days of the date of this order, Xerox shall notify Mr. Hill in writing of one or more positions to which it is willing to reinstate him. Each such position shall be at least equivalent (in earnings and benefits) and reasonably comparable (in responsibilities and prospects for advancement) to the position held by Mr. Hill prior to January 10, 1994. At least one such position shall be in the states of Florida, Georgia or Alabama. Within 30 days after he receives such notice, Mr. Hill shall notify Xerox in writing of whether he will accept any such position. Xerox shall reinstate Mr. Hill within 30 days after it receives notice of his acceptance of a

position. At the time of reinstatement, Xerox shall restore Mr. Hill's benefits in full and shall pay to Mr. Hill all earnings and other amounts (for the period from March 28, 1997, until the date of reinstatement), that Mr. Hill would have received or that would have been reimbursed to him had he been a Xerox employee during that period in a position equivalent to the position he occupied as of January 10, 1994.

4. The judgment entered by the clerk on March 27, 1997 (document 137) is hereby vacated. The clerk shall enter an amended judgment providing that plaintiff Jessie A. Hill, Jr. shall recover from defendant Xerox Corporation the sum of $603,000.00, plus interest as provided by law from and after the date of the original judgment, March 27, 1997, and that, in addition, defendant Xerox Corporation shall reinstate plaintiff Jessie A. Hill, Jr. in accordance with the court's order dated February 2, 1998.

5. The court reserves jurisdiction to enter an award of costs and attorney's fees and to enforce this order.