*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0084P (6th Cir.)
File Name: 04a0084p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

GERALDINE FUHR,
     *Plaintiff-Appellee/*
     *Cross-Appellant,*

    *v.*

SCHOOL DISTRICT OF THE
CITY OF HAZEL PARK,
     *Defendant-Appellant/*
     *Cross-Appellee.*

Nos. 01-2215/
2606; 02-1367

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-76360—George C. Steeh, District Judge.

Argued: September 16, 2003

Decided and Filed: March 24, 2004

Before: SILER, BATCHELDER, and COOK, Circuit
Judges.

———————————

**COUNSEL**

**ARGUED:** Timothy J. Mullins, COX, HODGMAN &
GIARMARCO, Troy, Michigan, for Appellant. Mark

Granzotto, LAW OFFICE OF MARK GRANZOTTO, Royal
Oak, Michigan, for Appellee. **ON BRIEF:** Timothy J.
Mullins, COX, HODGMAN & GIARMARCO, Troy,
Michigan, for Appellant. Mark Granzotto, LAW OFFICE OF
MARK GRANZOTTO, Royal Oak, Michigan, Deborah L.
Gordon, LAW OFFICES OF DEBORAH L. GORDON,
Bloomfield Hills, Michigan, for Appellee.

———————————

**OPINION**

———————————

ALICE M. BATCHELDER, Circuit Judge. Defendant-
appellant School District of the City of Hazel Park ("Hazel
Park") appeals from a jury award in favor of plaintiff-appellee
Geraldine Fuhr, in Fuhr's sexual discrimination suit brought
under Title VII, 42 U.S.C. § 2000e *et. seq.*, and the Elliott-
Larsen Civil Rights Act of Michigan, MCL § 37.2101 *et. seq*.
Hazel Park also appeals the district court's subsequent
injunctive order requiring the school district to hire Fuhr as
head coach of the school's varsity male basketball team, as
well as the award of attorneys' fees to the plaintiff. Plaintiff-
appellee Fuhr cross-appeals the district court's order striking
the jury's award of future damages following her installment
as the boys' varsity basketball head coach. For the reasons
set forth below, we will AFFIRM the judgment of the district
court in all respects.

**I.**

This suit arises from Hazel Park's 1999 decision to hire
John Barnett rather than Fuhr for the vacant position of boys'
varsity basketball coach. At that time, Barnett, a relatively
new male teacher at Hazel Park, had coached the boys'
freshman basketball team for two years. On the other hand,
Fuhr, a female teacher at Hazel Park, had been the head coach
of the girls' varsity basketball team for some ten years, and

coach of the boys' junior varsity and assistant coach of the boys' varsity basketball teams for eight years.[1]

In 1999, Charles Kirkland, the boys' varsity basketball coach, announced his intention to retire from coaching at the end of the year. Fuhr and Barnett were the only individuals who applied for the post. At the same time, David Aldred, who had been the Hazel Park High School athletic director for thirteen or fourteen years, announced that he was retiring on July 1, 1999. The committee assembled to interview the candidates for the position consisted of Superintendent James Anker; Dan Grant, the district athletic director; Victor Mayo, the assistant superintendent; Jim Meisinger, the high school principal; and Tom Pratt, the individual replacing Aldred as the high school athletic director. Neither Aldred nor Kirkland, both of whom who supported Fuhr for the coaching job, was on the committee.[2] According to Aldred, Grant told him that Anker did not want Aldred to participate in the interviews.

The committee interviewed Barnett first, followed immediately by Fuhr. Anker, who made the ultimate hiring decision, left Fuhr's interview shortly after it started and did not return. In the committee conference following the interviews, some members expressed concerns about unspecified community complaints against Fuhr and the idea that Fuhr would be coaching two major varsity sports in quick succession. Anker eventually returned to the meeting and, according to Meisinger, informed the committee that several members of the school board did not want Fuhr to be named the boys' varsity basketball coach, and that "he had to comply

with their request." According to Aldred, this story was supported by comments made by Clint Adkins, the board president, who said he was "very concerned about a female being the head boys' basketball coach in Hazel Park." A day after the interview, Anker announced that Barnett would be the new boys' varsity basketball coach.

In October 1999, Fuhr filed suit in the Eastern District of Michigan, seeking compensatory damages, punitive damages, judgment for past and future lost wages and benefits, an order of the court placing her in the position of boys' varsity basketball coach, attorneys' fees, and any other appropriate equitable relief. Hazel Park moved for summary judgment, arguing that Fuhr had failed to establish a prima facie case of sexual discrimination and that the District had legitimate, non-discriminatory reasons for the decision to hire Barnett. The district court denied defendant's motion, and the case proceeded to jury trial.

The jury returned a verdict in Fuhr's favor, awarding her $245,000 in present damages and $210,000 in future damages. The district court thereafter granted Fuhr's request for injunctive relief, ordering Fuhr named boys' varsity basketball coach. In an amended order, after receiving briefs on the subject of future damages, the district court struck the jury's award of future damages in its entirety. The district court also granted Fuhr attorneys' fees, and denied Hazel Park's motion for a new trial, motion for remittitur, and renewed motion for judgment.

Hazel Park now appeals the judgment, the award of attorneys' fees, and the denial of its motions for a new trial and remittitur, and renewed motion for judgment. Fuhr cross-appeals the district court's order striking the award of future damages.

---

[1] Through 1999, when this suit was filed, the high school girls' basketball season in the state of Michigan was held during the fall, while the boys' basketball season took place during the winter.

[2] Grant admitted at trial that both Aldred and Kirkland supported Fuhr for the coaching position. In subsequent testimony, however, Grant stated that he received no formal endorsement of Fuhr from Aldred or Kirkland.

## II.

Hazel Park argues on appeal that it is entitled to judgment as a matter of law for two reasons: first, that Fuhr failed to establish a prima facie case of gender discrimination; and second, that Hazel Park offered legitimate, non-discriminatory reasons for its failure to hire Fuhr. We review de novo the denial of a motion for judgment as a matter of law. *McCurdy v. Montgomery County*, 240 F.3d 512, 517 (6th Cir. 2001).

Hazel Park's first argument relies on its contention that Fuhr did not suffer an adverse employment action, and therefore could not prove a prima facie case of gender discrimination. Because the case proceeded to trial, however, we are no longer concerned with whether the plaintiff established a prima facie case, but instead focus on the actual question of discrimination. In *Roh v. Lakeshore Estates*, we said:

> "A Court of Appeals 'should not review the case for whether a prima facie case had been made, but rather, whether the ultimate issue of discrimination falls in the favor of the Plaintiffs or Defendant.' *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 862 (6th Cir. 1997). 'Of course, evidence that bears upon elements of the prima facie case can also come into play in assessing the ultimate question of discrimination.' *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 825, 827 (6th Cir. 2000)."

*Roh v. Lakeshore Estates, Inc.*, 241 F.3d 491, 498 (6th Cir. 2001).

The ultimate question of discrimination in this case is whether Hazel Park "fail[ed] or refuse[d] to hire . . . or otherwise . . . discriminate[d] against [Fuhr] with respect to h[er] compensation, terms, conditions, or privileges of employment, because of [Fuhr]'s . . . sex." 42 U.S.C. § 2000e-2(a)(1). Under the circumstances of this case, that

question includes a determination of whether there was evidence from which the jury could have concluded that the action of which Fuhr complains was adverse to her. Hazel Park contends that there is not, arguing that the boys' varsity coaching position pays the same as the girls' varsity position, that the school considers the two positions to be equal, that obtaining the position would have been only a lateral move for Fuhr, and that denial of a lateral move is not "adverse" as a matter of law. Fuhr, however, points to the evidence at trial that clearly established a pay differential between the position that she already had and the position that she sought. Both before she applied for the varsity boys' position and after she was denied that job, Fuhr coached the boys' junior varsity team. In that job, she was paid 9% of her teacher's salary. Had she been hired for the boys' varsity position, she would have been paid 11% of her teacher's salary.

The district court directly addressed this issue in its order denying Hazel Park's motion for a new trial:

> "Defendant continues to argue that this is a failure to transfer case, in spite of the court's previous ruling that what is at issue is either a failure to promote plaintiff from coach of the boys' junior varsity basketball team to boys' varsity coach, or a simple failure to hire case. When viewed as a failure to promote or failure to hire case, the pay differential between the boys' junior varsity and varsity positions makes it clear that plaintiff has established adverse employment action."

*Fuhr v. Hazel Park*, No. 99-76360, Order Denying Defendant's Motion (E.D. Mich., Feb. 21, 2002). We think the district court was entirely correct here. Although Fuhr stated during trial that she would be willing to quit coaching the girls' varsity team in order to coach the boys' varsity, it is clear from the testimony at trial that the decision-makers at Hazel Park thought Fuhr intended to coach both teams. The relevant inquiry is therefore not whether the boys' varsity position would have resulted in an increase in pay over that of

the girls' varsity position, but rather whether it would have resulted in an increase in pay over that of the junior varsity position. Clearly it would have. Contrary to Hazel Park's assertion, Fuhr did suffer an adverse employment action.

Hazel Park next argues that because it offered legitimate, non-discriminatory reasons for its failure to hire Fuhr as the boys' varsity basketball coach , it is entitled to judgment as a matter of law. According to Hazel Park, Fuhr was already the girls' varsity basketball coach, and the seasons overlapped; the school anticipated that Michigan would move the girls' season to the same time as the boys', making it much more difficult for Fuhr to coach both the boys' and girls' teams; Hazel Park had a policy of permitting any one individual to hold only one of four major varsity coaching positions; and Barnett was well qualified for the position. Citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993), Hazel Park contends that the burden remained on Fuhr to prove the school district's reasons pretextual: "A reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false *and* that discrimination was the real reason." *Id.* at 515 (emphasis in original).

Hazel Park's statement of the applicable law is correct, but its application of that law is not. As the Supreme Court has made clear, once the plaintiff has made out her prima facie case and the defendant has articulated legitimate, non-discriminatory reasons for its action, the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), is no longer relevant, and the presumption of discrimination "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 510-11. The factfinder must then determine whether the defendant intentionally discriminated against the plaintiff on the basis of—in this case—her gender. And while it may be sufficient for a finding of intentional discrimination that the factfinder does not believe the defendant's proffered non-discriminatory reason, such disbelief does not compel that finding. *Id.* at 511. The burden is on the plaintiff to present enough evidence to support her claim of intentional

discrimination, and "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000).

Here, in addition to her prima facie case, Fuhr presented direct evidence that gender was a factor in the decision not to hire Ms. Fuhr as the boys' varsity basketball coach. There was testimony that Clint Adkins, the President of the School Board, had stated that he was "very concerned about a female being the head boys basketball coach in Hazel Park." The Superintendent, James Anker, admitted that members of the Board had indicated to him that they did not want Fuhr to get the job as boys' varsity coach. Following the decision not to hire her, Fuhr also had conversations with Principal Jim Meisinger, who confirmed that the reason she did not get the job was her gender.

The standard for granting judgment as a matter of law "mirrors" that for granting summary judgment, such that "the inquiry under each is the same." *Id.* at 150 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986)). In addressing Hazel Park's motion for judgment as a matter of law, we must review all of the evidence in the record, and we "must draw all reasonable inferences in favor of the nonmoving party . . . [T]he weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (citation omitted). And we must disregard all evidence favorable to the moving party that the jury is not required to believe. *Id.* Using this standard, we conclude that the jury had sufficient evidence to support its verdict. The jury was entitled not only to disbelieve Hazel Park's proffered non-discriminatory reasons for denying Fuhr the position she sought, but to believe her direct evidence that the school district's true reason for that action was her gender. Hazel Park's contention that it is entitled to judgment as a matter of law is without merit.

### III.

Hazel Park next argues that a new trial should be awarded on the basis of alleged misrepresentations committed by Fuhr's attorney during her closing argument. "Misconduct by an attorney that results in prejudice may serve as a basis for a new trial. The burden of showing prejudice rests with the party seeking the new trial, and district courts have broad discretion in deciding whether to grant a motion for a new trial." *In re Air Crash Disaster*, 86 F.3d 498, 524 (6th Cir. 1996) (citations omitted). The district court did not allow counsel for Hazel Park to discuss during closing argument the availability of injunctive relief. During plaintiff's closing argument, however, Fuhr's attorney stated that "[t]he only thing that I can ask you for is to award money. There is nothing else that the person can ask . . . . [A]ll we can do is award money damages." Hazel Park argues that these statements "are a misrepresentation of the law, and are false," and incorrectly led the jury to believe that the only remedy available to Fuhr was money, and resulted in a higher award of present damages than the jury would have awarded had it known of the availability of injunctive relief.

In order to be entitled to a new trial, Hazel Park must show both that the closing argument was improper and that Hazel Park was prejudiced by the impropriety, that is, that there is a reasonable probability that the jury's verdict was influenced by the improper argument. Fuhr has countered, however, that the statements from her counsel were neither inaccurate nor inflammatory.[3] We agree. Fuhr's counsel informed the jury

---

[3] Fuhr also argues that Hazel Park could have suffered no prejudice from the statements because the district court ultimately struck the jury's award of future damages when it granted Fuhr's request for equitable relief. Indeed, the case was presented to the jury for an award of all Ms. Fuhr's injuries, past and future. The awards were separated, however, because the propriety of future damages was "dependent on a court ruling - whether Ms. Fuhr was entitled to instatement - which had not been made at the time the jury was considering its verdict." According to Fuhr it was

that the only thing she could ask the jury to award was monetary damages. This statement is correct. She could not ask the jury to grant equitable relief even if the jury were inclined to do so. Hazel Park, furthermore, failed even to object to the statements when they were made. We have applied a high standard of review under such circumstances. *See Strickland v. Owens Corning*, 142 F.3d 353, 358 (6th Cir. 1998) (stating that the failure to object "does raise the degree of prejudice which must be demonstrated in order to get a new trial").

Hazel Park has failed to demonstrate a reasonable probability that the jury was improperly influenced by these comments. Hazel Park offers no support for its contention that the jury would not have awarded $245,000 in present damages, had the jury known that Fuhr could have sought injunctive relief once the jury found that Hazel Park had denied her the position on the basis of her gender. Hazel Park's assertions alone are not enough to establish reasonable probability of improper influence.

### IV.

Hazel Park also urges on appeal that the trial court erred when it ordered the school to hire Fuhr as boys' varsity basketball coach; denied Hazel Park's motion for remittitur; and ordered Hazel Park to pay Fuhr's attorneys' fees. For the reasons set forth below, we reject these arguments.

---

understood by the court and counsel that the jury's award of future damages would be subject to later court review when Fuhr's claims for equitable relief were addressed post-trial. That is in fact precisely what later occurred.

**The Order of Instatement**

Upon a finding of invidious discrimination, a district court has wide discretion to impose equitable remedies in order to "fashion the most complete relief possible" designed to "make the victims of unlawful discrimination whole." *Shore v. Federal Express Corp.*, 42 F.3d 373, 377 (6th Cir. 1994) (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975)). The availability of instatement or reinstatement is therefore entrusted to the sound discretion of the district court, and a decision granting such relief is reviewed by this Court only for abuse of discretion. *Shore*, 42 F.3d at 377-78. Furthermore, as Fuhr has noted, the central purpose of the state and federal anti-discrimination laws on which this suit is based is "to make the person whole for injuries suffered on account of unlawful employment discrimination," and the general rule is therefore that "[t]he injured party is to be placed, as near as may be, in the situation [s]he would have occupied if the wrong had not been committed." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418-19 (1975). We have held that victims of discrimination are presumptively entitled to instatement or reinstatement, *Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160, 1171 (6th Cir. 1996); *Shore v. Federal Express Corp.*, 777 F.2d 1155, 1159 (6th Cir. 1985), and that reinstatement is the preferred equitable remedy in cases where discrimination has been proved. *See E.E.O.C. v. Yenkin-Majestic Paint Corp.*, 112 F.3d 831, 836 (6th Cir. 1997); *Schwartz v. Gregori*, 45 F.3d 1017, 1023 (6th Cir. 1995).

Hazel Park has established that trial courts have, in some circumstances, not required employers to "bump" an innocent third party in order to instate the plaintiff into the third party's position, *see Kraemer v. Franklin and Marshall College*, 941 F.Supp. 479 (E.D. Pa. 1996), and has noted that we have held that where "reinstatement is not possible," an award of front pay is sometimes appropriate in order to effectuate the "make whole" purposes of Title VII. *Shore*, 777 F.2d at 1159. The school has also emphasized a number of cases where the

courts have concluded that reinstatement was not proper, or noted that it would be inequitable to remove an "innocent incumbent" (such as John Barnett) from the position, and therefore denied the plaintiff's request for equitable relief. *See Spagnuolo v. Whirlpool Corp.*, 717 F.2d 114 (4th Cir. 1983); *Wangsness v. Watertown Sch. Dist.*, 541 F. Supp. 332 (D. S.D. 1982). These cases demonstrate only that the district court probably would not have abused its discretion had it denied Fuhr equitable relief. They do not support the contention that the district court abused its discretion by granting it.

In ordering instatement, the district court weighed "the relative hardships that will be occasioned on Plaintiff and Mr. Barnett [and] to the school district itself." The district court also made specific mention of the fact that it was considering Barnett's status as an innocent incumbent. The court nonetheless recognized that denying Fuhr an equitable remedy would perpetuate the effects of the discrimination proved by Fuhr, and therefore found that instatement was appropriate. The district court did not abuse its discretion by ordering Ms. Fuhr's instatement as the coach of the boys' varsity team.

**The Motion for Remittitur**

Hazel Park has argued that it was entitled to remittitur with respect to the jury's award of $245,000 for damages that Fuhr sustained through the date of the verdict. This Court reviews the denial of remittitur for an abuse of discretion. *Slayton v. Ohio Dep't of Youth Servs.*, 206 F.3d 669, 679 (6th Cir. 2000); *Bickel v. Korean Air Lines Co.*, 96 F.3d 151, 156 (6th Cir. 1996). "A trial court is within its discretion in remitting a verdict only when, after reviewing all evidence in the light most favorable to the awardee, it is convinced that the verdict is clearly excessive." *Farber v. Massillon Bd. of Educ.*, 917 F.2d 1391, 1395 (6th Cir. 1990); *see also Jackson v. City of Cookeville*, 31 F.3d 1354, 1359 (6th Cir. 1994); *Slayton*, 206 F.3d at 679 (holding that the district court should reduce a

jury's verdict only when the judgment "clearly exceeds" the maximum amount of compensatory damages a jury could reasonably award); *Bickel*, 96 F.3d at 156 (same); *In re Lewis*, 845 F.2d 624, 635 (6th Cir. 1988) (same).

Hazel Park claims that Fuhr did not present any evidence at trial of economic damages, and that Fuhr did not suffer any non-economic damages related to the boys' varsity basketball coaching position. The record, however, is to the contrary. There was testimony that Fuhr earned a lower percentage of her teacher's salary as coach of the boys' junior varsity team than she would have earned as the boys' varsity coach. The difference between these two figures represents the economic loss directly attributable to Fuhr's failure to obtain the position of boys' varsity basketball coach. While there is conflicting evidence as to the existence of non-economic damages sustained by Fuhr, the jury found that Hazel Park's discrimination caused Fuhr emotional injury. The district court then found, quite reasonably, that the jury's decision to award $245,000 was not clearly excessive in light of the evidence presented.

Hazel Park has also suggested that the jury's award of past damages should be stricken or reduced because Fuhr was granted the post-trial equitable relief of instatement to the position she had been denied by Hazel Park. Defendant cited no authority for this proposition. Whatever effect the equitable decree had on the propriety of *future* damages, it did not affect the damages for injuries already suffered before the order. The district court did not abuse its discretion in denying the defendant's motion for remittitur.

**Attorneys' Fees**

Hazel Park contended that Fuhr was not entitled to an award of attorneys' fees, or, in the alternative, that the attorneys' fees granted by the district court were "clearly excessive in light of the average hourly billing rates in the community." The first argument is meritless. Both Title VII

and Michigan's Elliot-Larsen Act give a court discretion to award attorneys' fees when appropriate. Fuhr prevailed on her claim of discrimination, and an award of attorneys' fees is certainly appropriate. In making the latter argument, Hazel Park emphasized that the hourly rates charged by Fuhr's attorneys were in excess of the average billing rates contained in an economic survey of the Michigan Bar Journal. A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney, *Wells v. New Cherokee Corp.*, 58 F.3d 233, 239 (6th Cir. 1995); *Wayne v. Village of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994), and we review such decisions only for abuse of that discretion. *Granzeier v. Middleton*, 173 F.3d 568, 576 (6th Cir. 1999); *Phelan v. Bell*, 8 F.3d 369, 373 (6th Cir. 1993). The Supreme Court has stated that in awarding fees, courts should look to the hourly rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). Fuhr presented affidavits signed by several attorneys attesting that the hourly rates requested by her attorneys were appropriate. Finally, the Supreme Court has expressly rejected Hazel Park's argument that the district court's award was improper because plaintiff's counsel was retained on the basis of a contingency fee arrangement. "We have never suggested that a different approach is to be followed in cases where the prevailing party and his (or her) attorney have executed a contingent-fee agreement . . . . To the contrary . . . we have adopted the lodestar approach as the centerpiece of attorney's fee awards." *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989). In short, we are not convinced that the fees granted by the district court were clearly excessive, and we find no abuse of discretion here.

**V.**

The final issue before this Court is Fuhr's cross-appeal of the district court's order striking her future damages award following her post-trial instatement to the position of boys' varsity coach. Although Fuhr admits that the jury's award of

future lost earnings had to be eliminated by the court's instatement order, she maintains that the same is not true of her future emotional damages. She analogizes this case to *Hill v. Xerox*, 998 F.Supp. 1378 (N.D. Fla. 1998), where the court recognized that a successful plaintiff's emotional injuries resulting from defendant's discriminatory conduct continue even in the face of reinstatement. That case, however, is easily distinguished from the instant matter. The plaintiff in *Hill* sought front pay, but not reinstatement. The court nevertheless ordered reinstatement, and noted that by doing so it was granting plaintiff something less desirable than what the jury had awarded him. Fuhr, on the other hand, sought—and received—a court order requiring Hazel Park to put her in the position of boys' varsity basketball coach. Furthermore, Fuhr herself has stated that the jury award was intentionally separated into past and future damages because the propriety of the future damages was "dependent on a court ruling—whether Ms. Fuhr was entitled to instatement—which had not been made at the time the jury was considering its verdict." According to Fuhr's own briefs, it was understood by the district court and counsel that the jury's award of future damages would be subject to later court review when plaintiff's claims for equitable relief were addressed post-trial.

When the jury deliberated it had not been advised that Fuhr could receive injunctive relief after the trial. The jury did not distinguish between future economic and future emotional harm; rather, it formulated its future damages award to compensate plaintiff for not receiving the position. Plaintiff has now obtained that position, and future compensation received in lieu of that position is unwarranted.

Even if we could separate from the jury's total award the amount of future lost earnings (generously estimated by the district court to be around $50,000), this Court cannot say, based on the record, what the remaining amount of emotional damages should be. Fuhr has argued that the school district created an atmosphere at Hazel Park High School which will

make it difficult for her as boys' varsity coach, and that she will suffer future damages as a result of a hostile work environment. But whether she will in fact suffer such harm is entirely speculative and in any event, that kind of harm was never considered by the jury, which considered only the harm resulting from Fuhr's *not* being the coach of the boys' varsity basketball team. The district court therefore did not err by striking plaintiff's future damages after granting injunctive relief.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.