786 F.2d 1507
 40 Fair Empl.Prac.Cas. 1050,
40 Empl. Prac. Dec. P 36,305
Jerome L. ARCHAMBAULT, Plaintiff-Appellee, Cross-Appellant,
v.
UNITED COMPUTING SYSTEMS, INC., a foreign corporation,
Defendant-Appellant, Cross-Appellee.
 No. 85-3066.
 United States Court of Appeals,
Eleventh Circuit.
 April 21, 1986.
 
 Michael G. Williamson, Orlando, Fla., Byron J. Beck, Marc E. Elkins, Overland Park, Kan., for defendant-appellant, cross-appellee.
 Joseph Egan, Jr., Orlando, Fla., for plaintiff-appellee, cross-appellant.
 Appeals from the United States District Court for the Middle District of Florida.
 Before HILL, Circuit Judge, and TUTTLE and HENDERSON,* Senior Circuit Judges.
 HILL, Circuit Judge:
 
 FACTS
 
 1
 Appellee Jerome Archambault brought the present action alleging that his dismissal by appellant United Computer Systems, Inc. [hereinafter "UCS"] violated the Age Discrimination in Employment Act, 29 U.S.C. Sec. 621 et seq. The district court referred the case to a United States magistrate pursuant to 28 U.S.C. Sec. 636(b)(2). After conducting an evidentiary hearing, the magistrate recommended that judgment be entered in favor of Archambault. The district court conducted a subsequent hearing on objections raised by UCS to the magistrate's report and recommendation and held that Archambault had failed to satisfy his burden of persuasion with respect to the age discrimination claim. In Archambault v. United Computer Systems, Inc., 695 F.2d 551 (11th Cir.1983), this court remanded the case on the ground that the district court, in refusing to adopt the magistrate's findings, had failed to apply the clearly erroneous standard appropriate for review of a magistrate's finding of discrimination. See Pullman-Standard v. Swint, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). On remand, the district court ruled that it could not find the magistrate's findings clearly erroneous, but remanded the case to the magistrate for clarification of certain findings pertaining to damages. After a further remand for additional clarification as to the damages issue, the magistrate issued a report and recommendation regarding damages, concluding Archambault was entitled to $15,815 in actual damages. The district court approved the magistrate's assessment of actual damages, then independently determined that UCS' violation was "willful" as that term is defined by this circuit and awarded Archambault an additional $15,815 in liquidated damages.
 
 
 2
 The following facts are relevant to this case. On November 16, 1973, UCS hired Archambault for the position of sales representative in its Tampa office. Archambault enjoyed substantial success in this position. Early reviews by immediate supervisors were highly complimentary, although reservations were expressed about his management abilities. UCS subsequently promoted Archambault to branch manager of the Orlando office. Once again, his initial evaluation after assuming this new position was very good. The Orlando office remained a productive office throughout Archambault's direction of that office.
 
 
 3
 In the fall of 1976, Jim Smidt became regional sales manager for the Southern Region of UCS and thus assumed responsibility over the office Archambault managed. Smidt apparently was advised of a number of problems existing with the Orlando office when he assumed control, including a lack of new account acquisitions, inadequate control over office expenses, and difficulties in managing Archambault. Smidt had also witnessed Archambault's presentation at a June, 1976 sales meeting for managers in the Southern Region and, according to Smidt's testimony, developed from that presentation the opinion that no organized sales plan existed for the Orlando market.
 
 
 4
 Smidt and Archambault apparently experienced a clash of philosophies as to proper management of the Orlando office. The two men conducted a number of discussions in an effort to alleviate the concerns of which Smidt was advised when he assumed his position, though apparently Archambault's responses to these discussions were not to Smidt's satisfaction. In a January 1977 evaluation, Smidt gave Archambault his first and only negative evaluation, repeating the concerns mentioned previously. On February 21, 1977, Smidt notified Archambault that he was being dismissed. Archambault testified that Smidt informed him after the dismissal that the computer industry was a "young man's game" which had "outgrown him." Archambault also introduced evidence that in response to inquiry about why Archambault had been dismissed, Smidt told Archambault's successor that Archambault was "too old" for the position. The notice of termination stated the dismissal was the result of "[i]neffective management of their Orlando office ... [inability] to carry out UCS marketing objectives, that is new account acquisition." Archambault subsequently instituted the present suit.
 
 
 5
 The magistrate hearing the case determined that Smidt recommended and brought about Archambault's dismissal and was motivated in this action to a significant degree by the view that Archambault did not project the young image he considered appropriate for UCS. The magistrate further found that Archambault's age sufficiently tainted Smidt's view of Archambault and a possible replacement such that it was a basis in fact for the dismissal.
 
 DISCUSSION
 
 6
 UCS initially challenges the liability finding, asserting (1) certain findings of fact in the magistrate's report and recommendation are clearly erroneous; and (2) the magistrate misapplied Eleventh Circuit law as to the allocation of burden of proof in age discrimination cases. UCS also challenges the award of damages, contending the district court's determination that the violation was willful and its subsequent award of liquidated damages pursuant to that finding was error as (1) the district court employed an improper legal standard in making the "willful" determination; (2) even employing the standard used by the district court there was insufficient evidence to support the willfulness finding; and (3) the finding of willfulness was contrary to the magistrate's report and recommendation and thus may be sustained only if the magistrate's finding was clearly erroneous. Archambault cross-appeals with respect to the calculation of damages, contending that the magistrate and district court incorrectly ascertained the time at which damages stopped accruing by (1) erroneously imposing upon the victim of the discrimination, rather than the employer, the burden of proving that the victim is not entitled to reinstatement; and (2) holding that elimination of a plaintiff's job, standing alone, is sufficient to cut off his remedy.
 
 Liability Finding
 
 7
 We first review UCS' allegations of error in the magistrate's findings of fact. UCS objects specifically to the following findings:
 
 
 8
 19. The conduct of the defendant's representative, Jim Smidt, in recommending and causing the discharge of the plaintiff was motivated in significant measure by Smidt's view of the plaintiff as not fitting the image he had in mind as appropriate and in the customer relations interest of the defendant.
 
 
 9
 20. The image was of a young man, of the age and appearance, to the extent age is a factor in appearance, of plaintiff's replacement.
 
 
 10
 21. The factor of plaintiff's age sufficiently tainted Smidt's view of plaintiff and whoever he had in mind in replacement that it was a basis in fact for the plaintiff's discharge.
 
 
 11
 UCS asserts that the record clearly establishes that Archambault's discharge resulted from shortcomings with respect to his job performance, particularly (1) his inability to acquire new accounts; (2) his continued lack of technical expertise, most importantly as to new UCS products; (3) his inability to improve management in his office; and (4) his inability to alter his methods of sales and marketing.
 
 
 12
 The district court originally referred this action to the magistrate as a special master pursuant to 28 U.S.C. Sec. 636(b)(2). Ordinarily, a district court may reverse the findings of a special master only if they are clearly erroneous. In re Multiplonics, Inc., 622 F.2d 709, 723 (5th Cir.1980). A finding of fact is clearly erroneous if, although there is evidence to support the finding, a review of the entire record leaves the court with a definite and firm conviction that a mistake has been made. Id. at 623. A review of the record here does not leave us with such a definite and firm conviction.
 
 
 13
 Archambault introduced evidence of a strong performance record with the company, supplemented by a number of outstanding reviews. Discrepancies existed in UCS' explanations of the dismissal. UCS responded to a Department of Labor investigation by stating that the dismissal was due in part to customer complaints from a Jim Pless, when in fact these complaints occurred after Archambault's dismissal and then only upon Smidt's solicitation. Archambault testified that Smidt stated after dismissing Archambault that the computer industry was a "young man's game" which had "outgrown him." Nicholas Mascia, who replaced Archambault as manager of the Orlando area, testified that when he inquired as to why his predecessor had been dismissed Smidt stated that Archambault was "too old" for the position. Evidence was also introduced that Smidt decided to fire Mascia, Archambault's replacement, but refrained from doing so until after completion of the Department of Labor investigation, which one could infer as an effort to keep Mascia quiet regarding Smidt's "too old" comment. We conclude that the sum total of this evidence demonstrates that these findings of fact were not clearly erroneous.
 
 
 14
 We now turn to the question of whether the magistrate applied the proper order and burden of proof for age discrimination cases. A plaintiff establishes a prima facie case of age discrimination by proving (1) his membership in a protected class; (2) his discharge; (3) his qualifications for the job; and (4) his replacement by a person outside the protected class. Price v. Maryland Casualty Co., 561 F.2d 609, 612 (5th Cir.1977). The burden then shifts to the employer to produce evidence that the employee was discharged for a legitimate, nondiscriminatory reason. This production requirement is satisfied when the employer's evidence "raises a genuine issue of fact as to whether it discriminated against the plaintiff." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207, 216 (1981). Once this production is accomplished, the plaintiff then carries the burden of persuasion that the reasons offered for his discharge were merely a pretext for age discrimination. Carter v. Maloney Trucking & Storage, 631 F.2d 40, 42 (5th Cir.1980).
 
 
 15
 UCS asserts that the following conclusions of law indicate the magistrate incorrectly applied the burdens of proof and persuasion.
 
 
 16
 4. The plaintiff met his burdens of proof and persuasion, and made a prima facie showing of age discrimination in his case by showing he belongs to the statutorily protected age group, was qualified for his job, was discharged, and was replaced by a person outside the protected group.
 
 
 17
 5. The defendant was unable to show a reasonable, nondiscriminatory basis for its discharge of the plaintiff.
 
 
 18
 6. The stated reasons for discharge, ineffective management of the Orlando office and inability to carry out defendant's marketing objectives, were a pretext for a discriminatory discharge.
 
 
 19
 These conclusions, UCS asserts, demonstrate that the magistrate held that Archambault met his burdens of proof and persuasion merely by making a prima facie case of age discrimination, and that the magistrate did not require Archambault to show by a preponderance of the evidence that the legitimate reasons for his dismissal were merely a pretext for age discrimination, rather required UCS to demonstrate by a preponderance of the evidence that they were not such a pretext. We find no merit in appellant's claim. We do not read these conclusions of law separately, rather together, assuming that the magistrate employed the correct standard unless from the record the contrary appears. The contrary does not appear. A proper reading of Conclusion of Law # 4 indicates that Archambault separately met his burdens of proof and persuasion and made a prima facie showing of age discrimination. This interpretation is supported by the latter two conclusions of law. Conclusion of Law # 6 indicates that Archambault satisfied the factfinder that the stated reasons for the dismissal were merely a pretext for a discriminatory discharge, which intimates that Archambault was allocated and sufficiently carried out his burdens of proof and persuasion.
 
 
 20
 In all factfinding at the trial level, regardless of the allocation of the burden of proof, the ultimate task of the factfinder is to ascertain where the preponderance lies. Various burdens of production and persuasion are often integrally related to the same findings of fact. As already discussed, in age discrimination cases the plaintiff must establish the elements of his prima facie case, after which the defendant has the burden of going forward with a legitimate reason for the dismissal, at which time the plaintiff must prove by a preponderance of the evidence that the reason articulated by the defendant is merely a pretext for a discriminatory dismissal. While the magistrate's statement of this process may have been somewhat inartful, taken in their entirety the conclusions of law indicate this process was properly carried out. Absent any other indications in the record that the magistrate at trial placed an inappropriate burden of proof upon the employer, we will not find that he did so simply because he employed inappropriate language in stating the conclusions of law as developed from the necessary findings of fact. We thus uphold the liability finding.
 
 Award of Liquidated Damages
 
 21
 Pursuant to 29 U.S.C. Sec. 626(b), the district court shall award liquidated damages only in cases of "willful" violations of the ADEA. In this action, the magistrate held that the discharge of Archambault was "willful in the sense that it was intended, not inadvertent, and knowingly done." The magistrate did not recommend an award of liquidated damages. The district court, however, ordered liquidated damages, noting:
 
 
 22
 [U]nder the law of this circuit, a violation of the ADEA is willful if the employer is aware that his actions are subject to the provisions of the act, even if the employer reasonably believed in good faith that his conduct was not in violation of the act.
 
 
 23
 ....
 
 
 24
 In this case, it is obvious from the record and from the magistrate's underlying findings that the defendant's violation of the ADEA was willful under the test of this circuit, i.e., that the defendant was aware that his actions were governed by that act.
 
 
 25
 UCS challenges this action by the district court, asserting first that the trial court employed an improper standard in determining whether liquidated damages should be awarded. In the recent decision of Trans World Airlines, Inc. v. Thurston, --- U.S. ----, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), the Supreme Court defined what constitutes "willful" conduct for purposes of the liquidated damages provisions of the ADEA. The Court held that to establish a violation as "willful," a plaintiff must prove that "the employer knew or showed reckless disregard for the matter of whether the conduct was prohibited by the ADEA." Id. at 625. In so holding, the court explicitly rejected a more expansive "in the picture" standard similar to that employed by the district court in this case. A plaintiff cannot prevail merely by demonstrating that the employer was "cognizant of an appreciable possibility that the employees involved were covered by the ADEA." Id. Also, the Trans World Airlines decision made clear that an employer is not subject to the liquidated damages provision of the ADEA if it had reasonable grounds for believing that its conduct did not violate the Act. Id. at 625 n. 2.
 
 
 26
 Intentional knowing violations of the ADEA obviously remain actions that merit liquidated damages. While an employer held to have engaged in age discrimination within the ADEA will no longer be subjected to liquidated damages merely because the employer is aware of the possible applicability of the Act, the Trans World Airlines standard does not require proof of an intentional violation of the Act; action which violates the law, whether or not undertaken with specific intent, may be found sufficient for liquidated damages if it is shown that the employer acted against one in the protected age group recklessly and without any concern at all about the existence of the law. Thus the threat of the penalty of liquidated damages encourages employers to make a good faith effort to be acquainted with and to comply with the ADEA; even though, in a developing field of law such as this, they must from time to time be found to have failed. The district judge applied the more liberal "in the picture" standard this circuit has previously recognized in assessing liquidated damages. Trans World Airlines represents a sufficient alteration of that standard that the findings in this case ought to be evaluated against that new standard. For that reason we remand this case to the district court for a determination on the issue of liquidated damages in light of the new standard announced by Trans World Airlines.
 
 
 27
 UCS further asserts that there is no factual basis for the district court's finding of willfulness, and thus that finding should be reversed. We are not prepared to say this contention is correct. The record is replete with evidence that in dismissing Archambault UCS in fact showed reckless disregard for the provisions of the ADEA. Chief among this evidence are the testimonies regarding comments by Smidt that Archambault was dismissed because Smidt considered him "too old for the position" and felt the computer industry was a "young man's game" which had "outgrown him." The discrepancies in UCS' response to the Department of Labor investigation, as well as the company's retention of Nicholas Mascia until completion of the investigation in an apparent effort to conceal the "too old" comment, provides additional support for the conclusion. Thus, while we conclude the district court employed an improper standard in assessing liquidated damages, we are unable to direct the district court that an award of liquidated damages on remand would be inappropriate.
 
 
 28
 In remanding the issue of liquidated damages, we find it necessary to address UCS' assertion that as the district court may reverse the findings of a magistrate serving as a special master only upon concluding that the magistrate's findings are clearly erroneous, Archambault v. United Computer Systems Inc., 695 F.2d 551 (11th Cir.1983), and as the magistrate did not recommend an award of liquidated damages, the district court could not then subsequently assess liquidated damages without a determination that the magistrate's finding was clearly erroneous. Appellant's argument is misplaced. While UCS claims that the magistrate made a decision not to award liquidated damages, the magistrate, as the district court observed, in fact made no finding and no decision in this regard. The clearly erroneous standard was thus inapplicable. On remand, the district court may award liquidated damages on its own accord.
 
 Cut-off of Damages
 
 29
 On remand, the magistrate conducted an evidentiary hearing on the damages issue. At this hearing he determined that the position held by Archambault at the time of his dismissal, manager of the Orlando office, was eliminated by March or April of 1978 as a consequence of a legitimate, nondiscriminatory business decision on the part of UCS. The magistrate thus concluded that Archambault was entitled to damages only through March of 1978. Archambault challenges this determination, asserting alternatively that the burden of proof was improperly allocated as to whether, upon elimination of the Orlando manager position, Archambault would have remained with the company in some other capacity, and that even if the burden of proof was properly allocated the magistrate's findings on this issue were not supported by the evidence.
 
 
 30
 Turning first to the burden of proof issue, appellant asserts that the burden of proof that absent the discriminatory firing a plaintiff would have later been dismissed for legitimate nondiscriminatory reasons rests upon the defendant. As the district court cited Gibson v. Mohawk Rubber Co., 695 F.2d 1093 (8th Cir.1982) in adopting the magistrate's finding that Archambault was not entitled to lost wages for the period after the elimination of his former position, Archambault argues, this indicates an improper allocation of the burden of proof to Archambault on the issue of whether he would have remained with the company. We note initially that recent Eleventh Circuit authority indicates that the burden of proof on this issue rests with the defendant to establish by a preponderance of the evidence that plaintiff would not have been retained in some other capacity. See Lewis v. Smith, 731 F.2d 1535, 1539 (11th Cir.1984); Walker v. Ford Motor Co., 684 F.2d 1355, 1362 (11th Cir.1982). However, the district court cited Mohawk only as support for its conclusion that as the magistrate found that Archambault's employment with UCS would have been terminated in March of 1978 for a legitimate, nondiscriminatory reason, he was not entitled to lost wages for the period thereafter. From the record we can discern no evidence that the magistrate applied a different standard than that articulated by Lewis and Walker and thus conclude that Archambault's alleged error is without merit.
 
 
 31
 We next assess appellee's contention that even if the proper burden of proof was employed, the findings of the magistrate are not supported by the evidence. As a subpart of this issue, Archambault, citing Nord v. United States Steel Corp., 758 F.2d 1462 (11th Cir.1985), contends that the issue in limiting damages is not whether his position was abolished by UCS, rather whether he would have remained in the employ of UCS after the company's reorganization. Archambault argues that UCS presented no evidence on this issue. Further, Archambault contends that even under the standard which he alleges the magistrate and district court employed, that of whether the former position was in fact eliminated, the finding was clearly erroneous as there was no elimination of the responsibilities and functions of the position, merely an elimination of the job title.
 
 
 32
 We are unpersuaded by appellant's argument. First, from the record it appears clear to us that the magistrate determined that Archambault would not have remained in the employ of UCS after the company's reorganization. Appellant's effort to label the magistrate's determination as something other than this is unsuccessful. Second, we find that the evidence clearly supports the magistrate's determination. It is clear that the position Archambault formerly occupied ceased to exist by April 1978, as a result of company consolidation, and that this consolidation was for a legitimate business reason, diverting money saved by elimination of this position to company expansion. Evidence was presented through the testimony of Jim Vogle, who was appointed Florida district manager for UCS in March of 1978, and whose responsibilities subsumed those previously assigned to Archambault and his successor, that the circumstances of corporate reorganization led to the elimination of Archambault's previous position. Vogle testified that in December of 1977 UCS made a decision to reduce costs by reorganizing the management structure of the UCS operation and combining the telephone and nontelephone sales managers' positions. The money saved by this consolidation was to be used to establish new offices and products, thus expanding the growth capabilities of UCS. As part of this reorganization, Vogle assumed his position as Florida district manager, which included supervising the Orlando and Tampa office as well as efforts to expand into the Ft. Lauderdale area. The practical effect of this reorganization was to eliminate the branch manager's position in Orlando. The fact that these responsibilities were assumed by others is merely a byproduct of any reorganization.
 
 
 33
 No evidence was introduced that Archambault would have remained with UCS after the consolidation. However, evidence was presented which indicated that Archambault's lack of technical expertise would have prevented him from remaining with the company after elimination of the Orlando sales manager position, even had the discriminatory firing not occurred. The sales person hired after Vogle's consolidation was responsible for both Orlando and Ft. Lauderdale. UCS had no technical support in Ft. Lauderdale. Archambault admits that he lacked technical proficiency in the products then sold by UCS. Evidence was introduced that he never acquired this proficiency, and in fact someone with such technical proficiency was retained on the staff of the Orlando office while he managed that office. Additionally, Nicholas Mascia, Archambault's successor, as well as another member of the Orlando office, Lee Cagle, were both terminated on or about the time of the reorganization. Archambault's lack of technical proficiency, along with UCS' actions with respect to other members of the Orlando office, indicates that he would not have remained with UCS once his former position had been abolished.
 
 
 34
 Having reviewed all of the alleged errors, for the reasons stated herein, the decision of the district court is AFFIRMED in part; REMANDED in part.
 
 
 
 *
 See Rule 3(b) Rules of the U.S. Court of Appeals for the Eleventh Circuit