712 So.2d 389 (1998)
TIME INSURANCE COMPANY, INCORPORATED, etc., Appellant,
v.
Harvey BURGER, et al., Appellees.
No. 90,869.
Supreme Court of Florida.
June 12, 1998.
*390 Kevin P. O'Connor of O'Connor & Meyers, P.A., Coral Gables, and R. Fred Lewis of Kuvin, Lewis, Restani & Stettin, P.A., Miami, for Appellant.
Scott E. Perwin of Kenny, Nachwalter, Seymour, Arnold, Critchlow & Spector, P.A., Miami, and Brian S. Keif, Key Biscayne, for Appellee.
William F. Merlin, Jr., Tampa, for Amicus Curiae, The Merlin Law Group.
PER CURIAM.
We have for consideration Burger v. Time Insurance Co., 115 F.3d 880 (11th Cir.1997), in which the United States Court of Appeals for the Eleventh Circuit certified a question to this Court. We have jurisdiction under article V, section 3(b)(6) of the Florida Constitution.
In its opinion, the Court of Appeals set forth the following predicate for the question:
I. STATEMENT OF THE FACTS AND PROCEDURAL HISTORY
Sometime in 1991, Harvey Burger submitted for reimbursement a $500 medical bill for an endoscopy to his medical insurance carrier, Time Insurance, Inc. According to Burger, the bill he received from the doctor's office contained a "stray" mark, leading him to believe that he owed $1,500 for the endoscopy. Burger further contends that, once informed by the doctor of the correct amount owed on the bill, he immediately relayed the information to Time Insurance and resubmitted a corrected bill for reimbursement. Sometime later, Burger submitted the bill a third time, marking it "Paid $500." Two weeks later, in August of 1991, Burger was informed that Time's Special Investigations Unit (SIU) was investigating the possibility that he had attempted to defraud the company. Between August, 1991 and November, 1992, Time did not pay any of Burger's outstanding health care claims. (Burger did not submit any new claims during this period.)
In February, 1992, consistent with Florida law (Fla.Stat. § 624.155(2)(a)), Burger's counsel submitted notice of a civil remedy claim to Time, requesting its payment of the non-suspect claims. Time failed to respond to the notice within the 60-day period allowed by law. Time did not satisfy its payment obligations with respect to Burger's claims until November, 1992.
At trial, Burger alleged that, because of Time's failure to pay his medical bills between August, 1991 and November, 1992, and his lack of financial resources to pay for medical services, he felt he could not go to the doctor or otherwise obtain medical services. Thus, he claimed that as a direct result of Time's failure to pay his claims in a timely fashion, he could not obtain needed medical treatment. He also complained of depression and an inability to communicate with his family as a result of his dealings with Time. For its part, Time attempted to discredit Burger's claims that he could not obtain health care during the relevant period by insisting that Burger never submitted new claims for reimbursement; Time's failure to pay related only to claims that Burger submitted prior to August, 1991.1
A jury found that Time Insurance violated Florida Statute § 624.155 by not attempting in good faith to settle Burger's claims, awarding him $50,000 in compensatory damages and $1 in punitive damages.2 On appeal, Time argues that Burger presented only evidence of emotional distress, and no evidence of economic harm, to support his claim for damages. According to Time, Fla. Stat. § 624.155 only created a cause of action for first-party claims of bad faith failure to pay; it did not alter case law which recognized mental anguish damages only in cases of intentional infliction of emotional distress. The jury award of $50,000 to Burger was therefore improper. Burger insists that: (1) Florida law does not preclude an award of damages for emotional distress in this type of action; and (2) the damages he alleged qualify as non-emotional injury sufficient to support the award.
1 This argument does not join Burger's claim that he simply did without the medical care he needed.
2 The jury also awarded Burger $500 for unfair claim settlement practices by Time Insurance, pursuant to Florida Statute § 626.9541.
Burger, 115 F.3d at 881.
The question reads as follows:

*391 (1) WHETHER THE DAMAGES ALLEGED BY APPELLEE QUALIFY AS COMPENSATORY DAMAGES UNDER FLA. STAT. § 624.155(7)? ALTERNATIVELY, WHETHER THE TYPE OF EMOTIONAL DISTRESS ALLEGED BY APPELLEE QUALIFIES AS DAMAGE THAT IS A "REASONABLY FORESEEABLE RESULT" OF A VIOLATION OF FLA. STAT. § 624.155, AND THUS SERVES AS AN APPROPRIATE BASIS FOR COMPENSATORY DAMAGES UNDER THE STATUTE?
Burger, 115 F.3d at 882.
In order to address this question properly, it is necessary to review the evolution of the applicable Florida law. Historically, Florida has long permitted so-called third-party bad faith claims in which an insured sues his liability insurance company for bad faith in failing to settle a claim which ultimately results in a third-party judgment against him in excess of the policy limits. Auto Mut. Indem. Co. v. Shaw, 134 Fla. 815, 184 So. 852 (1938); American Fire & Cas. Co. v. Davis, 146 So.2d 615 (Fla. 1st DCA 1962).
In Butchikas v. Travelers Indemnity Co., 343 So.2d 816 (Fla.1976), this Court considered the propriety of a jury award for punitive damages and mental anguish in a third-party bad faith claim. Butchikas, the insured, had been involved in an accident with Mr. and Mrs. Tompkins. Butchikas' liability insurer, Travelers Indemnity Company, declined to settle the Tompkins' claim against Butchikas. The Tompkins ultimately obtained a judgment in excess of the limits of the Travelers policy. Butchikas then sued Travelers and obtained a verdict awarding him damages for (1) the liability to the Tompkins in excess of the policy limits, (2) mental anguish as a result of problems caused by Travelers, and (3) punitive damages. This Court upheld the award of damages for the excess liability. However, we reasoned that Travelers' conduct was not so egregious as to support a claim for punitive damages. We also rejected the claim for mental anguish, pointing out that the rule in Florida was that absent a physical injury, a plaintiff can recover damages for mental anguish only where it is shown that the defendant acted with such malice that punitive damages would be justified.
In contrast to third-party bad faith claims, Florida common law did not permit first-party claims in which an insured contends that his insurance company is acting in bad faith for refusing to pay for benefits under the policy. Baxter v. Royal Indem. Co., 285 So.2d 652 (Fla. 1st DCA 1973). As Judge Wigginton explained, unlike the fiduciary relationship existent in a third-party claim, the relationship between the parties in a dispute over the insurance contract is that of debtor and creditor. Id.
The prohibition against first-party bad faith claims was lifted in 1982 by the enactment of section 624.155, which reads in pertinent part:
(1) Any person may bring a civil action against an insurer when such person is damaged:
....
(b) By the commission of any of the following acts by the insurer:
1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests[.]
§ 624.155(1)(b)1., Fla. Stat. (1991). This is the section under which Burger brought his present action against Time Insurance Company.
This Court addressed the damages recoverable in first-party claims under section 624.155 in McLeod v. Continental Insurance Co., 591 So.2d 621 (Fla.1992). Relying upon section 624.155(1)(b)1, McLeod sued his uninsured motorist carrier for failing to settle within the limits of his policy. He sought to recover the excess of the verdict he obtained against the uninsured motorist over the payments received from the tort-feasor's insurance carrier and another uninsured motorist carrier. At the outset, we acknowledged that the statute now authorized first-party bad faith claims against insurance companies. However, we rejected McLeod's claim for recovery of the "excess judgment" because even though the amount of that judgment *392 represented damages sustained by him, it was the tort-feasor rather than the insurance company that caused those damages. We held that the damages recoverable in a first-party bad faith action under the statute "may include, but are not limited to, interest, court costs, and reasonable attorney's fees incurred by the plaintiffs." Id. at 626. Of significance to the instant case, we went on to state in footnote 10:
Nothing in this decision affects the holding in Butchikas v. Travelers Indemnity Co., 343 So.2d 816, 819 (Fla.1976), which restricted the award of damages for mental anguish in bad faith insurer cases to instances in which the defendant acted with sufficient malice to support an award of punitive damages.
McLeod, 591 So.2d at 626 n. 10.
Time Insurance relies upon footnote 10 of McLeod for the proposition that we have already answered the certified question adversely to Burger's position. In response, Burger contends that McLeod is no longer controlling authority because its holding was overturned by the legislature through the enactment of section 627.727(10), Florida Statutes (1997). Burger also points out that section 624.155(7), which provides that the damages recoverable for violation of the statute "shall include those damages which are a reasonably foreseeable result of a specified violation of this section," places no limitation on the recovery of damages for emotional distress.
We do not agree that the enactment of section 627.727(10) diminished the effect of footnote 10 of the McLeod opinion. That legislation merely overturned the holding of McLeod by authorizing the recovery of the "excess judgment" in first-party bad faith actions against uninsured motorist insurance carriers. On the other hand, we must acknowledge that footnote 10 was clearly obiter dictum. The specific issue of whether damages for emotional distress can be recovered in first-party actions against health insurers under section 624.155(1)(b)(1) is now before us.
Prior to the enactment of section 624.155, the damages recoverable by a health insurance policyholder against an insurance carrier were limited to breach of contract damages and attorney's fees. Industrial Fire & Cas. Ins. Co. v. Romer, 432 So.2d 66 (Fla. 4th DCA 1983); Shupack v. Allstate Insurance Co., 367 So.2d 1103 (Fla. 3d DCA 1979). The fact that the legislature has specifically authorized first parties to recover damages in bad faith actions suggests that it may have contemplated more than the recovery of the same damages already available in a breach of contract action. In view of the possibility that an unjustified refusal to pay an insured's medical or hospital bills could result in the inability to obtain health care, we hold that section 624.155(1)(b)(1) authorizes the recovery of damages for emotional distress in a first-party bad faith claim against a health insurance company.
We now turn to the specific question posed by the Eleventh Circuit Court of Appeals, and rephrase it as follows:
WHAT ALLEGATIONS AND STANDARDS OF RECOVERY ARE NECESSARY TO SUSTAIN THE RECOVERY OF DAMAGES FOR EMOTIONAL DISTRESS IN A CLAIM UNDER SECTION 624.155(1)(b)(1) AGAINST A HEALTH INSURANCE COMPANY?
Our concerns over the speculative nature of many claims for emotional distress was reflected in Butchikas when we observed:
It would be far-reaching indeed to expand that notion to permit financial recovery for all of the emotional and mental strains which modern society inflicts on an individual by reason of its inevitable clashes.
Butchikas, 343 So.2d at 819.
In another context, our fear of speculative claims also caused us to adopt the more likely than not standard of causation in negligence actions described by Dean Prosser:
On the issue of the fact of causation, as on other issues essential to his cause of action for negligence, the plaintiff, in general, has the burden of proof. He must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility *393 of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.
Gooding v. University Hosp. Bldg., Inc., 445 So.2d 1015, 1018 (Fla.1984) (quoting William L. Prosser, The Law of Torts § 41 (4th ed. 1971) (footnotes omitted)).
In Brown v. Cadillac Motor Car Division, 468 So.2d 903 (Fla.1985), this Court established the impact rule, which holds that in the absence of a discernible physical injury a person cannot recover compensatory damages for mental distress or psychiatric injury. While we have concluded that section 624.155 creates a statutory exception to this rule, at least in health insurance cases, we note that the statute does not specify the standard of recovery for damages for emotional distress. Thus, we believe that we must narrowly construe the scope of recovery for such damages. Southern Attractions, Inc. v. Grau, 93 So.2d 120 (Fla.1956)(statute in derogation of the common law must be strictly construed). A court will presume that such a statute was not intended to alter the common law other than as clearly and plainly specified in the statute. Ady v. American Honda Finance Corp., 675 So.2d 577 (Fla.1996); Law Offices of Harold Silver, P.A. v. Farmers Bank & Trust Co., 498 So.2d 984 (Fla. 1st DCA 1986) (statute designed to alter the common law must speak in unequivocal terms).
To allow recovery of compensatory damages for mental anguish on the basis of lay testimony would subject health insurers to such claims every time such an insurer contested a claim. Insurers would be pressured into paying claims that the insurer legitimately should dispute because, if a jury disagreed with the decision not to pay, the insurer would have the additional exposure of a claim for mental distress. Insurers have a right and a duty to other policyholders to contest illegitimate claims. This statute should not be given a construction which destroys that right or frustrates that duty. Payment of illegitimate claims raises the cost of insurance for all policyholders.
On the other hand, if there is proof of bad-faith conduct in denying or untimely paying a claim and that conduct results in an insured not receiving either necessary or timely health care, we believe that the insured ought to have an opportunity to claim damages for emotional distress. The standard for recovery shall require proof: (1) that the bad-faith conduct resulted in the insured's failure to receive necessary or timely health care; (2) that, based upon a reasonable medical probability, this failure caused or aggravated the insured's medical or psychiatric condition; and (3) that the insured suffered mental distress related to the condition or the aggravation of the condition. In order for the insured to recover, these allegations will have to be substantiated by testimony of a qualified health care provider.
Having addressed the issue framed by the Eleventh Circuit Court of Appeals, we return the record to that court.[1]
It is so ordered.
OVERTON, HARDING and WELLS, JJ., and GRIMES, Senior Justice, concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion, in which KOGAN, C.J., and SHAW, J., concur.
ANSTEAD, Judge, concurring in part and dissenting in part.
I concur in the majority's holding that the legislature intended that health care insurance consumers have a remedy, beyond mere breach of contract damages, when health care insurers act in bad faith in dealing with their insureds. I do not agree, however, with the rigid evidentiary restrictions judicially engrafted upon this consumer protection legislation by the majority opinion. It appears that the majority has given the health insurance consumer a favorable interpretation of the first party bad faith statute with one hand, but has rendered that interpretation substantially meaningless with the other.
*394 The rationale offered by the majority for this judicial amendment of the statute is that "[i]nsurers have a right and a duty to other policyholders to contest illegitimate claims." Majority op. at 392-93. One obvious flaw in this reasoning is that an insurer would not be acting in bad faith by contesting illegitimate claims. It is apparent that the actual basis for the majority's action is a distrust of the jury system, a system that serves as the foundation of both our civil and criminal justice systems. I would also note that the imposition of such a specific and restrictive standard upon the insured in this case would be patently unfair, since the standard is being announced for the first time today.[2]
NOTES
[1] Burger's claim that the judgment in his favor should be affirmed because punitive damages were awarded is beyond the scope of the certified question.
[2] Prior to this opinion, this Court has never required expert testimony of mental pain and suffering. To the contrary, this Court in Angrand v. Key, 657 So.2d 1146 (Fla.1995), specifically limited the use of expert testimony in establishing damages for mental anguish. While Angrand involved the issue of whether an expert may testify as to the existence of "grief" in a wrongful death context, we held that qualified experts who treated a person for mental anguish may provide testimony of such matters so long as the testimony is necessary to assist the jury in understanding matters not within their common knowledge or everyday life experiences. With regard to mental pain and suffering, we noted that:

The relevant testimony on these issues usually comes from the survivors, friends, ministers, and others who testify as fact witnesses, as opposed to experts, because it has long been the rule in this state that there is no objective standard by which to measure these kinds of damages. Technical or mathematical calculations are impossible to make. The jury, guided by its judgment and everyday life experiences, is in the best position to make a fair assessment of these damages. In Braddock v. Seaboard Air Line Railroad Co., 80 So.2d 662 (Fla.1955), this Court stated:
Jurors know the nature of pain embarrassment and inconvenience, and they also know the nature of money. Their problem of equating the two to afford reasonable and just compensation calls for a high order of human judgment, and the law has provided no better yardstick for their guidance than their enlightened conscience. Their problem is not one of mathematical calculation but involves an exercise of their sound judgment of what is fair and right.
Id. at 1149.
Therefore, in addition to retroactively imposing a set of standards on an insured in first party claims against an insurer, the majority now apparently requires expert testimony on the issue of mental pain and suffering, a requirement that did not exist at the time the insured filed suit in this case. In answering certified questions from the federal courts, we should settle uncertain issues of law and limit any new rules or requirements to future litigants.