[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 25, 2000
THOMAS K. KAHN
CLERK

_____

Nos. 99-12360 & 99-13346
_____

D. C. Docket No. 96-03132-CV-SH

BENIGNO MUÑOZ,

Plaintiff-Appellee,

versus

OCEANSIDE RESORTS, INC. and MIAMI BEACH
RESORTS, INC.,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(August 25, 2000)**

Before EDMONDSON, BARKETT and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

In these consolidated appeals, we decide as an issue of first impression in this circuit whether an employer which demonstrates only that it eliminated an age discrimination plaintiff's former position satisfies its burden of proving that it legitimately would have terminated said plaintiff, thus precluding an award of front pay. We consider additionally: whether, following a jury verdict for the plaintiff, the district court improperly denied defendants' motion for judgment as a matter of law; whether the district court adequately instructed the jury regarding the plaintiff's evidentiary burden; and whether the damages award was excessive.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff-Appellee Benigno Muñoz, prior to his termination at age sixty-four, worked as a room service waiter at the Holiday Inn Oceanside Resort, owned and operated by Defendants-Appellants Oceanside Resorts, Inc. and Miami Beach Resorts, Inc. (collectively, the "Resort"). During his twenty-seven years of employment at the Resort, Muñoz received numerous performance awards and, excepting the day of his termination, no official reprimands. On May 10, 1995, however, Manuel Gonzalez, the Resort's General Manager, issued Muñoz a written

2

reprimand[1] after observing Muñoz kissing Susan Eddy, a female co-worker, on the cheek the day before. Gonzalez instructed Muñoz not to discuss his reprimand with anyone. Although Muñoz does not specifically admit to the incident for which he was reprimanded, he concedes that he often greeted female co-workers with a kiss on the cheek, as is customary among individuals of Cuban decent. He qualifies, however, that such has been his practice throughout the duration of his employment; that the Resort's management was aware, yet previously never objected to, this practice; and that no female employee ever has complained of this practice.

The ensuing events are in dispute. The Resort claims, but Muñoz denies, that Muñoz confronted Mercedes Rea, Gonzalez's secretary, whose signature appeared on the reprimand, and chided her for her complicity. Rea allegedly reported this confrontation to Gonzalez, who ordered Muñoz's discharge. Jorge

---

[1]The reprimand stated:

> Mr. Benigno Munoz was witnessed by General Manager Mr. Manuel Gonzalez on Tuesday, May 9, 1995 having body contact with an employee with a kiss on the face. Let this serve as a final written notice that any physical contact whatsoever with employees, guests, and or business associates of Oceanside Resorts Inc. will result in immediate termination.

Pl.'s Ex. 41, quoted in Appellant's Br. at 5. We note that this exhibit was not part of the appellate record, as both parties reclaimed their exhibits following trial. See Stipulation Permitting Withdrawal of Exhibits, in R.4, Tab 120. Muñoz, however, does not dispute the Resort's reporting of the reprimand's language.

Antonio, another Resort manager, informed Muñoz that the Resort was terminating him for insubordination, or more specifically, for having defied Gonzalez's instruction not to discuss his reprimand. Antonio directed a security guard to escort Muñoz from the Resort.

The Resort replaced Muñoz with Luis Salas, who at that time was over forty years of age, but twenty-three or twenty-four years younger than Muñoz. Salas's disciplinary record reveals that prior to his reassignment to Muñoz's former position, Salas received at least three written reprimands, yet was not terminated.

After complying with the prerequisite administrative protocol, Muñoz filed against the Resort a complaint in which he alleged age discrimination in violation of the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §§ 621-634, and the Florida Civil Rights Act (the "FCRA"), Fla. Stat. ch. 760. Following a three-day trial, the jury rendered a verdict in Muñoz's favor and awarded him $208,838 in damages: $58,838 in back pay and $150,000 in compensatory damages for emotional distress and dignitary injury. Additionally, the district court, on a separate motion, awarded Muñoz $58,838 in liquidated damages[2] and $22,449.80 in front pay, bringing Muñoz's total damages award to $290,125.80.

---

[2]When a jury finds that a defendant willfully violated the ADEA, which this jury so found, a plaintiff may be awarded liquidated damages equal to the amount of back pay damages. See 29 U.S.C. § 626(b) (1999) (authorizing liquidated damages as defined in 29 U.S.C. § 216(b) (1999)).

## II.  ANALYSIS

Pursuant to Federal Rules of Civil Procedure 50(b) and 59, the Resort filed a renewed motion for judgment as a matter of law or, alternatively, for a new trial or remittitur, all of which the district court denied.  The Resort appeals these denials.[3] Specifically, the Resort asserts: (1) it was entitled to a judgment as a matter of law because Muñoz failed to rebut sufficiently its nondiscriminatory explanation for Muñoz's termination; (2) a new trial is warranted because the district court inadequately instructed the jury and because the jury's damages award was excessive; and (3) the district court erred in not remitting the excessive damages award.  We consider each assertion in turn.  For the sake of concision, we treat the damages issues together.

### A.    The Resort's Motion for Judgment as a Matter of Law

We review *de novo* the district court's denial of the Resort's Rule 50(b)

---

[3]Two appeals are consolidated before us, Nos. 99-12360-G and 99-13346-G.  The first, No. 99-12360-G, appeals the denial of the Resort's motions for summary judgment and judgment as a matter of law.  Because this appeal was filed prior to the entry of final judgment, these denials were not "final decisions" as defined by 28 U.S.C. § 1291 and thus were not appealable to this court.  See Pitney Bowes, Inc. v. Mestre, 701 F.2d 1365, 1368 (11th Cir. 1983).  We therefore lack jurisdiction over appeal No. 99-12360-G and dismiss it.  The Resort also appeals the denial of its summary judgment motion in its second appeal, No. 99-13346-G; once a trial on the merits has occurred, however, the denial of such a motion is unreviewable on appeal.  See Wenzel v. Boyles Galvanizing Co., 920 F.2d 778, 782 (11th Cir. 1991); accord Jarrett v. Epperly, 896 F.2d 1013, 1016 & n.1 (6th Cir. 1990).

5

motion, applying the same standard as the district court.  See Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969) (en banc).[4]  In considering the evidence presented at trial, we draw all factual inferences and resolve all credibility determinations in the favor of the nonmoving party.  See id.  A Rule 50(b) motion should only be granted where "reasonable [jurors] could not arrive at a contrary verdict."  Id.

Muñoz concedes that he has no direct evidence of the Resort's intent to terminate him because of his age.  Relying instead on circumstantial evidence, Muñoz alleged his age discrimination claim within the analytical framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973).  See Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1432 (11th Cir.), cert. denied, 525 U.S. 962, 119 S. Ct. 405 (1998) (applying the McDonnell Douglas framework to an ADEA claim).  Once Muñoz established a prima facie case of discrimination, an intermediate burden of production shifted to the Resort to proffer a legitimate, nondiscriminatory reason for Muñoz's termination.  See id. The Resort satisfied that burden by explaining that it terminated Muñoz for insubordination.  Muñoz was then obliged to introduce evidence demonstrating

---

[4]Decisions by the former Fifth Circuit issued before October 1, 1981, are binding as precedent in the Eleventh Circuit.  See Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

that the Resort's proffered reason was pretextual, see id., which the Resort contends Muñoz failed to do. We disagree. At trial, Muñoz presented a substantial quantum of evidence from which a reasonable jury could infer that the Resort's proffered explanation for his termination was pretextual.[5] We focus on the evidence most critical to Muñoz's satisfaction of this burden: Muñoz's assertion that he did not engage in insubordinate conduct.

Muñoz testified that he never confronted Rea in defiance of Gonzalez's instruction not to discuss his reprimand.[6] Muñoz's testimony directly contradicted that of Rea,[7] creating a factual conflict properly resolved by the jury. The jurors could have credited the testimony of either Muñoz or Rea, as such determinations are within their province, and neither the district court nor this court may substitute

---

[5]Muñoz's evidence of pretext included:

- Muñoz was employed with the Resort for twenty-seven years, during which he never before received a documented reprimand;
- the Resort's management was aware of Muñoz's practice of kissing female coworkers, but never before admonished him for it;
- Muñoz was terminated following a single warning, which Muñoz alleges contravened the Resort's policy as outlined in its employee handbook that termination would follow three warnings;
- the reprimand was written in English, a language Muñoz neither reads nor speaks;
- Salas, Muñoz's replacement, had received several reprimands during the course of his employment;
- a room service waiter of Muñoz's age did not comport with the "trendy" image the Resort was attempting to cultivate.

[6]See Trial Tr. at 220, in R.6.

[7]See id. at 318, in R.6.

7

its judgment for theirs. See Boeing, 411 F.2d at 375. The Resort, however, contests the relevance of whether or not the confrontation actually occurred; in its own words, "[a]ll that matters is whether Rea told, truthfully or not, Gonzalez of the alleged confrontation."[8] In the Resort's view, Gonzalez's subjective belief that the confrontation occurred justified his decision to terminate Muñoz. The Resort, however, underestimates the effect that impugning Rea's credibility might have had on the jury. Rea was the Resort's only witness at trial[9] and therefore the only person to testify that she informed Gonzalez of a confrontation. If the jury rejected Rea's testimony concerning the alleged confrontation, it likewise could reject her further testimony regarding the reporting of that incident. A reasonable jury accordingly could accept Muñoz's theory of events: that Gonzalez concocted a scheme that included both a bogus reprimand and a subsequent false accusation of insubordination to cover his discriminatory desire to discharge an older employee.

The Resort contends that even if Muñoz produced sufficient evidence suggesting pretext, it nonetheless was entitled to judgment as a matter of law because Muñoz failed to introduce any evidence of the Resort's intent to discriminate against him on the basis of his age. Essentially, the Resort argues that

---

[8]Appellant's Br. at 10.

[9]Gonzalez was unavailable to testify due to his death prior to trial.

Muñoz may not survive its motion merely by discrediting the Resort's proffered reason for the termination. In <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, __ U.S. __, 120 S. Ct. 2097, 2109 (2000), however, the Supreme Court held to the contrary, explaining that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Although the Resort is correct that under the <u>McDonnell Douglas</u> framework, a plaintiff shoulders the ultimate burden of proving that age motivated the adverse employment action, <u>see</u> <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095 (1981), the plaintiff may satisfy this burden indirectly by undermining the legitimacy of the employer's proffered reason. To require otherwise would impose on the plaintiff the encumbrance of producing direct evidence of discrimination within an evidentiary framework specifically designed for situations in which no such evidence is available.

**B.      The Resort's Challenge to the Adequacy of the Jury Instructions**

The Resort asserts that it is entitled to a new trial because the district court inadequately instructed the jury of Muñoz's evidentiary burden both for establishing his prima facie case and for demonstrating that the Resort's proffered

reason for his termination was pretextual.  We review a district court's instructions

to a jury as outlined in Pesaplastic, C.A. v. Cincinnati Milacron Co., 750 F.2d

1516, 1525 (11th Cir. 1985), looking first to "whether the charges, considered as a

whole, sufficiently instruct the jury so that the jurors understand the issues

involved and are not misled."  Provided the instructions accurately convey the law,

the district court is afforded great discretion in the wording and style of its

instructions.  See Carter v. DecisionOne Corp., 122 F.3d 997, 1005 (11th Cir.

1997).

We have reviewed the district court's instruction regarding the four elements

necessary to establish a prima facie case of age discrimination[10] supported by

circumstantial evidence and find them to be substantively identical to those this

court enumerated in Bogle v. Orange County Board of County Commissioners,

162 F.3d 653, 656-57 (11th Cir. 1998) (quoting Turlington, 135 F.3d at 1432):

---

[10]The district court instructed the jury:

> In order for the plaintiff to prevail on his claim of age discrimination
> the plaintiff must prove the following four essential elements by a
> preponderance of the evidence: First, that plaintiff was within the
> protected group, that is, was 40 years of age or over; second, that
> plaintiff was adversely affected by an employment decision, namely,
> being discharged from employment; and third, that plaintiff was
> qualified for the position from which he was discharged; and finally,
> fourth, that plaintiff was replaced by a younger person.

Trial Tr. at 497, in R.7.

10

"(1) that [plaintiff] was a member of the protected group of persons between the ages of forty and seventy; (2) that [plaintiff] was subject to adverse employment action; (3) that a substantially younger person filled the position . . . from which he was discharged; and (4) that [plaintiff] was qualified to do the job [from which he was discharged]."

The Resort points out that the district court's framing of the elements of the prima facie case differs from that discussed in this court's decision in Earley v. Champion International Corp., 907 F.2d 1077, 1082 (11th Cir. 1990), which identified as one of its elements: "evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of age." Earley, however, is inapposite because the claim therein arose from an allegedly discriminatory reduction in force. As we recognized in Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 97 F.3d 436, 440 (11th Cir. 1996), "case law suggests that the standard for establishing a prima facie case depends on whether the case concerns a reduction in force as opposed to a termination." Because Munoz's claim, like that at issue in Bogle, was born of an allegedly discriminatory termination, we find that the district court satisfactorily articulated the elements of a prima facie case.

Regarding Muñoz's evidentiary burden for demonstrating that the Resort's proffered reason for his termination was pretextual, the district court gave the following instruction: "In order to find that the reason was pretextual you must find both that the reason was false and that the discrimination was the real reason for

11

discharging the plaintiff."[11]  The Resort does not challenge the correctness of this instruction; rather, it complains that the district court improperly declined to supplement the instruction by admonishing further that "'[a] plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason.'"  Tidwell v. Carter Products, 135 F.3d 1422, 1427 (11th Cir. 1998) (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997)).  Although the Resort is correct that a jury's evaluation of a proffered reason should focus on its legitimacy rather than its wisdom, "the trial court's refusal to give a requested instruction is not error where the substance of that proposed instruction was covered by another instruction which was given." Pesaplastic, 750 F.2d at 1525.  This applies here.  The district court's instruction required the jury to determine that the Resort's proffered reason was false in order to deem it pretextual; because this burden was more onerous than that implicit in the Resort's requested proviso, the district court did not err in rejecting it.

## C.    The Alleged Excessiveness of the Damages Award

The Resort next asserts that Muñoz's damages award was excessive, thereby

---

[11]Trial Tr. at 498, in R.7, Tab 128.

warranting either a new trial or remittitur. The damages award was segregated into four categories: (1) back pay and (2) damages for emotional distress and dignitary injury, the values of which were determined by the jury; and (3) liquidated damages and (4) front pay, the values of which were determined by the district court. The Resort challenges all but the liquidated damages award.

## 1. Back Pay

In an age discrimination suit, a successful plaintiff receives back pay from the date of his or her termination to the date of trial. See Kolb v. Goldring, Inc., 694 F.2d 869, 874 n.4 (1st Cir. 1982). The Resort does not dispute that the jury's award of $58,838 approximates Muñoz's lost earnings for this four-year period—May 1995 to June 1999. Rather, the Resort asserts that Muñoz discontinued his efforts to find employment once he began collecting Social Security benefits and therefore his recovery for back pay should have been limited accordingly. We find no merit in this assertion. The failure to mitigate one's damages is an affirmative defense, and as such, the Resort bore the burden of demonstrating at trial that the plaintiff did not seek comparable employment following his termination. See Weaver v. Casa Gallardo, Inc., 922 F.2d 1515, 1527 (11th Cir. 1991) (superseded by statute on other grounds). The only attempt

the Resort made to prove that Muñoz had ceased searching for replacement employment was to question him on cross-examination about his efforts, and Muñoz replied that although he discontinued recording his inquiries in 1996, he consistently pursued employment during this period.[12]  Sufficient evidence existed, therefore, from which a reasonable jury could have concluded that Muñoz did mitigate his damages.

The Resort also complains that the jury was permitted to include in its back pay award the value of Muñoz's employee "fringe benefits," such as the reduced cost of meals, health insurance coverage, and vacation pay.  This circuit repeatedly has held that such benefits should be recouped in a back pay award.  See, e.g., Crabtree v. Baptist Hosp. of Gadsden, Inc., 749 F.2d 1501, 1502 (11th Cir. 1985).  Muñoz submitted to the jury for use in its damages calculations an annual income estimate, supported by testimony, which included these items.  The Resort maintains that Muñoz inflated the value of the benefits, although it did not offer any competing figures to the jury.  On appeal, this court reviews an award of pecuniary damages (such as back pay) to determine whether it exceeds "the maximum possible award that is reasonably supported by the evidence in the record."  Deakle v. John E. Graham & Sons, 756 F.2d 821, 827 (11th Cir. 1985).

---

[12]See Trial Tr. at 272, in R.6, Tab 127.

Because the estimate submitted by Muñoz was the only one before the jury, and because the jury's award fell within this estimate, the back pay award was not excessive.

### 2. Damages for Emotional Distress and Dignitary Injury

Although damages for emotional distress and dignitary injury are unavailable under the ADEA, see Goldstein v. Manhattan Indus., Inc., 758 F.2d 1435, 1446 (11th Cir. 1985), the FCRA authorizes such recovery, see Fla. Stat. ch. 760.11(5) (1999) ("section 760.11(5)"). The Resort asserts, however, that this category of damages is legally unavailable to Muñoz because he failed to corroborate his claims to these injuries with objective medical testimony. In advocating this standard of proof, the Resort relies exclusively on Time Insurance Co. v. Burger, 712 So. 2d 389, 393 (Fla. 1998), in which the Florida Supreme Court imposed such an evidentiary requirement on plaintiffs suing their health insurers under section 624.155(1)(b)(1) of the Florida Statutes for emotional distress resulting from a delay in the receipt of health care services. Compelled by its recognition that section 624.155(1)(b)(1) created a statutory exception to the common law "impact rule," which, in the absence of physical injury, generally precludes the recovery of damages for emotional distress caused by negligence, the Burger court construed narrowly the scope of recovery for such damages and thus

15

formulated this heightened standard of proof. See id. at 393. We find Burger inapposite, however, because section 760.11(5), unlike section 624.155(1)(b)(1), does not derogate the impact rule. Indeed, the impact rule is not implicated in claims involving intentional conduct. See Brown v. Cadillac Motor Car Div., 468 So. 2d 903, 904 & n.* (Fla. 1985). The rationale underlying this limitation is instructive: "Where the psychic injury is based on simple negligence, proof of impact or objective physical manifestation affords a guarantee that the mental distress is genuine." Williams v. City of Minneola, 575 So. 2d 683, 693 (Fla. 5th Dist. Ct. App. 1991) (quoting Eastern Airlines, Inc. v. King, 557 So. 2d 574, 579 (Fla. 1990) (Ehrlich, C.J., specially concurring)). In contrast, where more egregious intentional conduct precipitates the emotional injury, its own invidiousness validates the sincerity of the injury. See id. Because illegal discrimination qualifies as such a condemnable intentional act, the emotional and dignitary harms it can cause are neither unforeseeable nor particularly enigmatic. See, e.g., Hill v. Xerox Corp., 998 F. Supp. 1378, 1384 (N.D. Fla. 1998) (recognizing the intangible injuries attending age discrimination). Seemingly underscoring this observation, section 760.11(5) specifies that employees aggrieved by discrimination may seek "damages for mental anguish, loss of dignity, and any other intangible injuries." Fla. Stat. ch. 760.11(5) (1999). By

16

contemplating recovery for damages that cannot be corroborated by medical testimony, the provision implicitly rejects the standard of proof articulated in Burger. Accordingly, we conclude that Muñoz's claim to damages for these injuries was permissible and that his testimony concerning the emotional and dignitary impact of the termination was sufficient to justify the jury's award.

Alternatively, the Resort contends that the jury's award of $150,000 was so excessive that it demonstrates that the jury was swayed by passion and prejudice. We disagree. As we have observed, "[t]he standard of review for awards of compensatory damages for intangible, emotional harms is deferential to the fact finder because the harm is subjective and evaluating it depends considerably on the demeanor of the witnesses." Ferrill v. Parker Group, Inc., 168 F.3d 468, 476 (11th Cir. 1999) (internal quotation omitted). We therefore will disturb such a jury verdict only "where the verdict is so excessive as to shock the conscience of the court." Goldstein, 758 F.2d at 1447. After reviewing the record, we conclude that this was not such a verdict. See, e.g., Hill, 998 F. Supp. at 1384 (upholding a jury's verdict of $457,000 for emotional distress).

### 3. Front Pay

The ADEA accords the district court broad remedial authority "to grant such legal or equitable relief as may be appropriate to effectuate the purposes of [the

ADEA]." 29 U.S.C. § 626(b) (1999). In a case of termination, such equitable relief assumes the form of either reinstatement or front pay for a finite future period. The district court enjoys wide discretion in selecting which remedy to impose against an employer found liable under the ADEA, and this court will not modify the remedial package absent an abuse of that discretion. See Goldstein, 758 F.2d at 1448. Here, the district court opted to award Muñoz $22,449.80 in front pay.

The Resort contends that the front pay award was inappropriate because of its speculative nature. It points out that the only assurance the district court received that Muñoz would have continued in his position had he not been terminated was Muñoz's own testimony, in which he stated an intent to remain employed until the age of seventy. Muñoz's intent, the Resort argues, was an insufficient basis for awarding front pay. As we have observed, however, "awarding prospective relief involves some risk of uncertainty, but that in itself does not preclude an award of such relief. [After all, d]istrict courts have had considerable experience with damages for future wages" in other contexts. Castle v. Sangamo Weston, Inc., 837 F.2d 1550, 1562 (11th Cir. 1988) (internal quotation omitted). Moreover, when age discrimination plaintiffs are near the age of retirement, this court has signaled its comfort with awarding front pay. In Lewis v.

Federal Prison Industries, Inc., 953 F.2d 1277, 1280 (11th Cir. 1992), this court cited with approval Blum v. Witco Chemical Corp., 829 F.2d 367, 376 (3d Cir. 1987), in which the Third Circuit held that awarding front pay to plaintiffs within eight years of normal retirement age did not require unreasonable speculation. At the time of his termination, Muñoz, after being employed by the Resort for twenty-seven years, was within six years of retirement; at the close of trial, he was but one year away. We conclude that under these circumstances, awarding Muñoz one year's worth of front pay was not an abuse of the district court's discretion.[13]

The Resort next asserts that Muñoz was ineligible to receive front pay because, even had Muñoz not been terminated in 1995, he nonetheless would not have been employed by the Resort at the time of trial. Rea testified on the Resort's behalf that sometime after Muñoz was terminated, the Resort eliminated its room

---

[13]The Seventh Circuit's decision in Hybert v. Hearst Corp., 900 F.2d 1050 (7th Cir. 1990), does not persuade us otherwise. The Hybert court vacated a plaintiff's five-year front pay award for being too speculative. In cases such as Castle and Lewis, however, we have rejected this notion.

Notably, the Hybert court predicated its rejection of the front pay award in part on the existence of a liquidated damages reward: "[L]iquidated damages are a relevant consideration in determining whether and how much front pay should be awarded." 900 F.2d at 1056. This court, on the other hand, explicitly has held that a liquidated damages award does not influence whether or not front pay is also awarded. See Castle, 837 F.2d at 1562 ("Liquidated damages are not meant to replace equitable relief under the ADEA."). This underscores the different approaches taken by this and the Seventh Circuit with regard to front pay awards and further demonstrates the immateriality of Hybert to our analysis here.

19

services and, accordingly, all room server positions.[14]  Although the Resort did not argue to the jury that this change in circumstances should limit Muñoz's back pay award, it did aver before the district court in a post-trial motion that it precluded front pay.[15]  This court has acknowledged that the elimination of a plaintiff's former position prior to trial may preclude the receipt of front pay.  See Nord v. U.S. Steel Corp., 758 F.2d 1462, 1473 n.11 (11th Cir. 1985); accord Sandlin v. Corporate Interiors, Inc., 972 F.2d 1212, 1215 (10th Cir. 1992); Graefenhain v. Pabst Brewing Co., 870 F.2d 1198, 1209 (7th Cir. 1989).  As we have observed, "[t]he purpose of the ADEA . . . is to make the plaintiff 'whole,' to restore the plaintiff to the economic position the plaintiff would have occupied but for the illegal discrimination of the employer."  Castle, 837 F.2d at 1561.  Awarding front pay to a plaintiff who ultimately would have been terminated confers a windfall upon that plaintiff and contravenes the remedial purpose of the ADEA.

The Resort does not dispute that it bore the burden of proving by a preponderance of the evidence that it would not have employed Muñoz at the time

---

[14]See Trial Tr. at 382-83, in R.7.

[15]See Defs.' Opp'n to Pl.'s Proposed Final J. at 2-3, in R.4, Tab 129.  In this motion, the Resort did suggest that the back pay award improperly included damages for the period between the elimination of Muñoz's former position and trial.  See id. at 3 n.1, in R.4, Tab 129.  Back pay, however, was before the jury; the Resort's failure to raise this issue at trial, therefore, waives it.

of trial.  See Lewis v. Smith, 731 F.2d 1535, 1539 (11th Cir. 1984); Walker v. Ford Motor Co., 684 F.2d 1355, 1362 & n.9 (11th Cir. 1982).  It argues instead that because Muñoz never refuted its factual allegation that all room server positions had been legitimately eliminated, it satisfied that burden, and, accordingly, the district court's decision to award front pay in light of this uncontroverted evidence was an abuse of discretion.  This court considered a similar argument in Archambault v. United Computing Sys., Inc., 786 F.2d 1507 (11th Cir. 1986).  There, an ADEA plaintiff asserted that although the employer introduced evidence that it had eliminated the plaintiff's former position, it failed to demonstrate further that it actually would have terminated the plaintiff rather than reassign him to some other position.  See id. at 1515.  The court, however, disagreed with the plaintiff's assessment of the evidence and determined that the employer offered sufficient evidence that the plaintiff was unqualified for any other position and therefore would have been terminated.  See id.  Consequently, the court did not decide the threshold issue of whether an employer satisfies its burden of proof by demonstrating only that it eliminated the plaintiff's former position.  The issue is now squarely before us, as the Resort's only evidence that it would not have employed Muñoz at the time of trial is its allegation that it has discontinued its room services.  We find that this evidence was insufficient to satisfy the Resort's

21

burden. Although the elimination of Muñoz's former position certainly is a valid consideration in the resolution of this issue, it does not compel the more critical conclusion that the Resort would not have employed Muñoz at the time of trial.[16] The Resort failed to introduce any evidence demonstrating either that Muñoz was unqualified for another available position[17] or that, for some other reason, reassignment would have been infeasible. Given this court's repeated recognition of the importance of equitable relief to compensating fully a victim of age discrimination, see, e.g., Castle, 837 F.2d at 1561, we are persuaded that requiring an employer to demonstrate with particularity that it actually would have terminated the plaintiff ensures that equitable relief is not foreclosed lightly and thus better comports with the broad remedial purpose of the ADEA.

## III. CONCLUSION

Because we conclude that the district court did not err in denying the

---

[16]For example, although the Resort intimates that it eliminated several positions when it discontinued its room services, the record does not reveal whether the Resort actually terminated the other room service employees. If the Resort reassigned them, then presumably Muñoz would have been afforded this same opportunity had he not been discharged on account of his age. See Nord, 758 F.2d at 1473 n.11; cf. Wilson v. S & L Acquisitions Co., 940 F.2d 1429, 1438 (11th Cir. 1991) (suggesting that although the employer had sold the division in which the plaintiff had worked to another company, front pay nonetheless may have been available because the purchasing company might have rehired her).

[17]Notably, Rea testified at trial that the Resort continues to maintain a restaurant, providing breakfast and lunch services. See Trial Tr. at 382-83, in R.7.

Resort's motions for judgment as a matter of law and for a new trial and that the damages award was not excessive, we AFFIRM the final judgment of the district court.